## DENNY *v.* GARAVAGLIA.

## VAN HOUTEN *v.* SAME.

1. JOINT ADVENTURES—PURPOSE—PROFITS—LOSSES.

   A joint adventure contemplates an enterprise jointly undertaken, an association of such joint undertakers to carry out a single project for profit, and that profits are to be shared, as well as the losses, though the liability of a joint adventurer for a proportionate part of the losses or expenditures of the joint enterprise may be affected by the terms of the contract.

2. SAME—CONTRIBUTION—COMMUNITY OF INTEREST—CONTROL.

   There must be a contribution by the parties to a common undertaking to constitute a joint adventure and a community of interest as well as some control over the subject matter or property right of contract.

3. SAME—HIGHWAY CONSTRUCTION CONTRACTORS—EVIDENCE.

   Association of defendant grading contractor with defendant paving contractor whereby they were to construct a portion of a road, payment was made to them jointly on the basis of estimates of work done but no control was exercised by one over the work of the other and no sharing of losses, did not create a joint adventure subjecting paving contractor to liability to a third person for negligence of the grading contractor.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 30 Am Jur, Joint Adventures §§ 3, 10–12.
[1–3] What amounts to a joint adventure. 48 ALR 1055; 63 ALR 909.
[5, 6] 2 Am Jur, Appeal and Error § 153; 3 Am Jur, Appeal and Error §§ 869, 893, 907.
[7] 3 Am Jur, Appeal and Error § 896.
[9, 10] 39 Am Jur, Nuisances § 200.
[9, 10] Contributory negligence as defense against liability for damage from nuisance. 57 ALR 7.
[10] 38 Am Jur, Negligence § 174 *et seq.*

4. AUTOMOBILES — PASSENGERS — CONTRIBUTORY NEGLIGENCE — EVIDENCE.

Plaintiff passenger in car driven by plaintiff motorist was properly found not guilty of contributory negligence in action for injuries sustained as result of defendant road grading contractor's negligence, where there is no evidence that she saw any warning signs or holes in the road or that there was any occasion for her to be attentive to the condition of the road or to her host's driving.

5. DAMAGES—EVIDENCE.

An award of damages in personal injury cases will not be disturbed on appeal, if reasonably within the range of the testimony, especially where damages are assessed for pain and suffering and loss of wages, past and future.

6. SAME—PAIN AND SUFFERING—LOSS OF WAGES.

Award of $11,031 to plaintiff passenger for personal injuries, loss of wages and pain and suffering, past and future, by trial judge sitting without a jury, did not constitute an abuse of discretion in amount of damages assessed, under evidence presented.

7. APPEAL AND ERROR—NONJURY CASES—EVIDENCE.

The Supreme Court does not reverse a case tried without a jury unless the evidence clearly preponderates in the opposite direction.

8. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—WARNING SIGNS—DEPRESSION IN ROAD—EVIDENCE.

Finding of trial court that plaintiff motorist was guilty of contributory negligence in failing to heed a highway warning sign at the side of the road and that such negligence proximately caused the accident when he drove into a depression in the highway which had been caused by defendant grading contractor's heavy trailers held, sustained by testimony presented.

9. NUISANCE—CONTRIBUTORY NEGLIGENCE.

Generally, contributory negligence is a defense to a nuisance that has its origin in negligence.

10. SAME—UNLIGHTED HOLES IN HIGHWAY—CONTRIBUTORY NEGLIGENCE.

Public nuisance created by defendant grading contractor by hauling 150 loads of dirt in a 10-hour shift on gravel road in large trailers, capable of holding 13 cubic yards of dirt, on State highway, which made a depression about 18 inches

deep extending halfway across the traveled portion of the highway and unlighted at night *held,* to have been created through acts of negligence, permitting defense of contributory negligence on part of plaintiff motorist who drove into hole at speed of 50 to 55 miles an hour without having seen sign at right side of road warning traffic to go slow because of road repairs.

Appeal from Allegan; Smith (Raymond L.), J. Submitted January 18, 1952. (Docket Nos. 63, 64, Calendar Nos. 45,283, 45,284.) Decided April 9, 1952. Rehearing denied May 16, 1952.

Separate actions of case by Harry R. Denny and another and Geneva Van Houten against Louis Garavaglia, Jr., and others, doing business as Louis Garavaglia, and Carl E. Goodwin and others, doing business as Carl Goodwin & Sons, for personal injuries and other damages sustained as a result of defendants' negligence in conducting certain road construction operations resulting in an alleged nuisance. Cases consolidated for trial and appeal. Judgment for defendants in action by plaintiff Denny and another. Judgment for plaintiff Van Houten against defendants Garavaglia and others but not against defendants Goodwin. Defendants Garavaglia appeal from judgment in favor of plaintiff Van Houten and in favor of defendants Goodwin. Plaintiff Denny appeals. Plaintiff Van Houten cross-appeals. Affirmed.

*Pierce, Planck & Ramsey,* for plaintiffs.

*Mason, Stratton, Kent & Wise (Paul E. Cholette,* of counsel), for defendants Garavaglia and others.

*Paulson, Laing, Palmer & Tinker,* for defendants Goodwin.

SHARPE, J. For the purposes of trial and appeal the above cases were consolidated. They arise from a traffic accident occurring on the 20th day of November, 1948, at about the hour of 7:20 p.m. On the day in question, plaintiffs, Harry R. Denny and Geneva Van Houten, left Charlotte at about 6:45 p.m., for the purpose of going to Howard City to the home of Geneva Van Houten's parents. In leaving Charlotte, they proceeded over M–50 which follows a northwesterly direction until it terminates at its junction with M–43, approximately 20 miles from Charlotte.

While making this trip Harry R. Denny was driving. The road traveled was gravelled and about 24 feet wide. The night was dark and they traveled at a speed of 50 to 55 miles per hour. As they passed Hunter road, about 18 miles northwest of Charlotte, the car hit a depression in the road and later struck a tree about 3 feet off the right-hand side of the road and approximately 300 feet from the depression.

Both plaintiffs were seriously injured. Both are permanently disfigured and disabled. Both suffered a loss of earning power. At the time of the accident, Geneva Van Houten was 30 years of age and Harry R. Denny 36 years of age.

The hole in the highway extended about half way across the traveled portion of the highway, was about 18 inches deep and filled or partly filled with water. The hole had been gouged out of the highway by the heavy road equipment used by defendant Garavaglia. The defendants are 2 road building contractors who jointly had entered into a contract with the Michigan highway department to grade and pave highway M–43 which intersects with highway M–50 north of Hunter road. The Garavaglia firm was engaged in hauling dirt from a pit located some distance northwest of the intersection of M–50 and Hunter road. M–50 had been designated as a

detour for M–43 traffic by the State highway department. For the purpose of hauling dirt, Garavaglia used what are called Euclids which are large trailers hauled by tractors and capable of hauling in excess of 13 cubic yards of dirt. On November 1, 1948, Garavaglia began hauling about 150 loads during a 10-hour shift. No repair work was done on this road on the day in question, but the day before the State highway department repaired the road by filling up the holes. At the time of the accident, no lighted flares were at or near the hole, but there were 3 unlighted flare pots at the hole. There was a "road repair" sign from 700 to 1,000 feet just off the highway southeasterly of the hole. The sign was 4 feet square and was a "reflectorized button sign, black and yellow, which said, Slow, Road Repair."

The cases came on for trial and the court without the aid of a jury entered judgment in favor of Geneva Van Houten against Louis Garavaglia and others in the amount of $11,031 and a judgment of no cause of action in the case of Harry R. Denny. The trial court also entered judgment of no cause of action in both cases as against Carl Goodwin & Sons.

Garavaglia appeals from the judgment in favor of plaintiff Geneva Van Houten and from the judgment in favor of Carl Goodwin & Sons.

We shall first discuss the claim made by Garavaglia that defendant Carl Goodwin & Sons is jointly liable with Garavaglia on the theory that both defendants were engaged in a joint venture. On this issue, the trial court made a finding of fact and gave his interpretation of the law relating thereto as follows:

"Both contractors agreed to submit 1 bid together to the State highway department, Garavaglia to do the grading and Goodwin to do the paving. There was 1 contract the terms of which treated the de-

fendants as a single entity with full responsibility for all of the work covered by the contract to be borne by both defendants. A single check covered the work done by both contractors. Their work was integrated and carried on in such a way as to cooperate to the fullest extent. None of Goodwin's equipment was used to haul the dirt on M–50 and no control exercised by him over this portion of the contract. There was to be no joint sharing of profits, it being understood and agreed that each was to have the profits made from his own share of the work and each was to suffer his own loss, if any. Under these circumstances is Carl Goodwin & Sons liable for the damages suffered by Geneva Van Houten?

"The intent of the parties is important. *Hathaway* v. *Porter Royalty Pool, Inc.*, 296 Mich 90, 103 (138 ALR 955). We find from the evidence that they did not relinquish to each other the right to control the operation of the other. As a matter of fact it is difficult to find where their operations in this particular case would be any different than if separate bids had been made and 2 contracts issued, except of course, that there was a single check issued for all the work done by both contractors to date and both parties were liable for completion of the whole project. This is not the case where any person has relied upon an apparent joint venture to his damage but where there is a question of whether or not to impute negligence. There being no community of interest in the profit of this venture and there being no actual exercise of control over the operations under consideration here by defendant Goodwin it would not seem that a holding of imputed negligence would be proper. The Court finds that for the purposes of this case that a joint venture between these defendants did not exist and that the action against Carl E. Goodwin, Wayne T. Goodwin, Norman A. Goodwin and Ivan F. Goodwin, individually and as copartners doing business as Carl Goodwin & Sons may be dismissed and a judgment of no cause of action entered in their favor."

In *Hathaway* v. *Porter Royalty Pool, Inc.,* 296 Mich 90, 102 (138 ALR 955), cited in the trial court's opinion, we said:

"It can be said that a joint adventure contemplates an enterprise jointly undertaken; that it is an association of such joint undertakers to carry out a single project for profit; that the profits are to be shared, as well as the losses, though the liability of a joint adventurer for a proportionate part of the losses or expenditures of the joint enterprise may be affected by the terms of the contract. See 17 Ann Cas 1022, 1025; 24 Ann Cas 202, 203, and 39 Ann Cas 1210, 1214. There must be a contribution by the parties to a common undertaking to constitute a joint adventure (see annotation, 63 ALR 909, 910); and a community of interest as well as some control over the subject matter or property right of contract. *Griffiths* v. *Von Herberg,* 99 Wash 235 (169 P 587); *Darling* v. *Buddy,* 318 Mo 784 (1 SW2d 163, 58 ALR 493)."

In view of the above language as applied to the facts in the case at bar we find that defendants Garavaglia and Goodwin were associated together under a contract with the State highway department to construct a portion of a road. Payment was made to them jointly on the basis of estimates of work done. Each firm received a portion of the check based upon the work done by each firm. As of November 20, 1948, Goodwin & Sons had not performed any part of the work and had not received any money. There was no control by Goodwin over the work that Garavaglia would do nor was there any control by Garavaglia over the work Goodwin would do. There was to be no sharing of losses. It clearly appears that the contracting firms did not intend to create a joint venture. We are in accord with the finding of the trial court that a joint venture did not exist between the 2 defendants.

Defendant Garavaglia appeals and urges that the contributory negligence of Geneva Van Houten was the proximate cause of the accident. In considering this issue we have in mind that she was a passenger in the car owned and operated by plaintiff Denny; and that her contributory negligence, if any, is governed by the rule announced in *Bricker* v. *Green*, 313 Mich 218 (163 ALR 697).

We are in accord with the following statement found in the trial court's opinion:

"The conduct of Miss Van Houten presents a different picture. Nowhere is it suggested that she had any notice of or was in any way aware of any change in the condition of highway M–50. She was a guest passenger in Denny's car, and not being the driver, was not charged with the same degree of care in making observations as was the driver. There being nothing in the record to indicate that she saw any warning signs or holes in the road, or that there was any reason for her to be attentive to the condition of the road or to Denny's driving it cannot be said that she was guilty of contributory negligence either as a matter of law or in fact. It is not suggested that Denny's negligence is imputed to her."

Plaintiff Geneva Van Houten filed a cross appeal and urges that the damages awarded her are inadequate and urges that she be granted a new trial.

On the issue of damages the trial court found as follows:

"Miss Van Houten is a comely young woman 31 years of age and engaged to plaintiff Denny. Prior to the accident she was drawing unemployment checks having been laid off at the General Motors plant in Ionia. Previously she had worked for Norge, A. C. Spark Plug Co., and as a clerk in a Kroger store. She has had only an 8th grade education. She suffered, as a result of this accident, a fracture of the right upper and lower jaws, both of

which have completely healed, a fracture of the right ulna which has completely and satisfactorily healed, a compound fracture of both lower bones in the right leg, and bruises on the arms and legs. The fracture to the right tibia and fibula required an open reduction. Her right leg is now ½ inch shorter causing a little limp which can be corrected by the use of a ½ inch shoe lift. She has the full use of her right arm. A piece of ankle bone has not healed causing her some difficulty and pain in moving this member. There was testimony from Dr. Badgley that an operation would help this situation, the estimated cost of which was from $200 to $250. It was not apparent to the court that there was any deformity to the zygomatic bone on her cheek, although there was testimony that such a deformity could be discovered upon a clinical examination by a physician. For all practical purposes the court finds that there is no deformity to her face. Miss Van Houten should be able to be restored to her former earning capacity after an operation on her ankle, with a period of 6 months for rehabilitation to restore full use of her leg.

"Miss Van Houten should be awarded for loss of earnings to date of trial the sum of $4,000, hospital bill of $426, doctor bill of $355, future medical expenses of $250 for operation on her ankle, deformity to face $500, and for pain, suffering and inconvenience $1,000. She should be awarded for future pain, suffering and inconvenience the sum of $2,000, and for loss of future earnings the sum of $2,500. This latter figure is made up of $1,500 for loss of wages incurred during the operation and rehabilitation period together with an award of $1,000 which may reasonably be expected during the period prior to the operation and while she is adjusting to her new work. The total of these figures is $11,031 and Geneva Van Houten may have a verdict and judgment in this amount.

"Plaintiffs have gone to great lengths to impress the court with the severity of the injuries suffered,

with the permanence of the injuries and with the fact that we are now dealing economically with an inflated dollar. All these matters have been carefully considered. In the case of Miss Van Houten the court has found that she has little if any noticeable disfigurement to her face, that an operation will be likely to correct her difficulty with her ankle, and that her arthritic condition in her leg is only the normal condition following an injury of this type. It is granted that she will always have to get about on a shortened right leg, but again the 3 doctors who testified concerning this condition put the shortening at $\frac{1}{4}$ or $\frac{1}{2}$ or $\frac{3}{4}$ inches. It also appears to the court that her chances for a recovery sufficient to restore her former earning capacity are more than reasonable. We have also considered the likelihood of marriage between the 2 plaintiffs and the events which often follow such a union. The court is convinced that the compensation found to be due this plaintiff is adequate and complete under all the circumstances."

It is urged that the trial court in awarding damages failed to give full consideration to her loss of future earnings, future pain and suffering and disfigurement. The court awarded the sum of $2,000 for future pain and suffering and the sum of $2,500 for loss of future earnings. We cannot assume that the trial court failed to take into consideration all testimony produced relating to her damages, and this is so, even though all testimony bearing upon her damages is not mentioned in his opinion. For many years this Court has adhered to the rule than an award for damages in personal injury cases will not be disturbed if reasonably within the range of the testimony. The damages assessed in personal injury cases for pain and suffering, both past and future, depend in no small measure upon the sound judgment of the finder of facts. The measure of damages for loss of future earnings where the time

element is uncertain also is based upon the sound judgment of the trier of the facts and, if reasonable, will not be disturbed. In the case at bar we cannot say that the trial court abused his discretion in the amount of damages assessed. It follows that the judgment in favor of plaintiff Geneva Van Houten is affirmed, with costs against defendants Garavaglia.

Plaintiff Harry R. Denny appeals and urges that the trial court was in error in finding that plaintiff's failure to see the warning sign was contributory negligence which bars recovery.

In his opinion, the court stated:

"From his own lips we learn that he did not see any warning signs or flares of any kind at any time prior to his injury. He testified that he was driving at a speed of from 50 to 55 miles an hour over a smooth, graveled highway until he struck, without warning, the hole in question. Defendants concede that Denny's failure to discover the hole in the road under the conditions prevailing at the time of the accident is not contributory negligence as a matter of law, but they strongly urge that the court find him guilty of such conduct as a fact. We have already held that there was a reflectorized warning sign about 1,000 feet before the Hunter crossing with the legend 'Slow—Road Repairs.' This should have been seen by the normal observant driver and should have been a warning of a change in road conditions necessitating a slowing down so that the new conditions could be observed and avoided. Denny did not see the hole, nor did he see the water that filled the hole. It is doubtful that, having failed to observe the warning sign, he would have appreciated the significance of the presence of the water. Such failure to observe the warning so placed for his protection was contributory negligence that bars plaintiff Denny from recovering in this action."

There is evidence from which the court could find that the sign in question was located from 800 to

1,000 feet southeast from the point where the accident occurred; that it was 4 feet square, was a reflectorized button sign, black and yellow, which said "Slow—Road Repair"; that neither of the plaintiffs saw the sign; that plaintiff Denny was traveling at a speed of 50 to 55 miles per hour over a 24-foot graveled road.

Plaintiff Denny testified:

"*Q.* As you drove along there with your lights on you didn't observe the condition of the highway as to whether or not there was any rut or hole or anything different to this nice smooth road?

"*A.* It looked like a nice smooth road.

"*Q.* That is what—at least what you saw, if you saw anything?

"*A.* That is what I was looking. I was watching the road and naturally watching where I was going, but I did not see no ruts or anything in the road. * * *

"*Q.* So, as you approached this point where your car jumped up in the air, you didn't see anything unusual at all about the highway as far as holes on the road being dug up in any way?

"*A.* I did not. * * *

"*Q.* Had you observed any sign of any kind as you proceeded to approach the scene of the accident, repair signs?

"*A.* No.

"*Q.* So as you were proceeding northwesterly on this highway, you didn't observe any sign 'Road under repair' or 'Slow down,' anything of that kind?

"*A.* No."

In our opinion the contributory negligence of plaintiff Denny presents a question of fact under all of the circumstances in this case. The repair sign was placed there for the purpose of warning travelers on the highway that there is danger ahead unless traveling is done at a moderate rate of speed.

While the sign did not say what the danger was, yet it was a notice to travel with care and caution. In cases tried without the aid of a jury we do not reverse unless the evidence clearly preponderates in the opposite direction. We do not find that the evidence preponderates in the opposite direction. The finding of the trial court that the contributory negligence of plaintiff Denny was a proximate cause of the accident is affirmed.

Plaintiff also urges that his contributory negligence is not a defense where the defendant creates a public nuisance in the highway. In connection with this issue the trial court made the following finding of facts:

"Upon the theory that the defendants are guilty of a nuisance the court finds that the condition of the road as it existed at the intersection of Hunter road and M–50, and as it continued to exist in spite of the highway department's efforts to alleviate the situation because of the continued unlawful overloading and failure properly to warn the public, constituted a public nuisance. But this public nuisance is founded upon the negligent acts of defendants and not upon the doing of something inherently dangerous or unlawful."

It is the general rule that contributory negligence is a defense to a nuisance that has its origin in negligence. See *McFarlane* v. *City of Niagara Falls*, 247 NY 340 (160 NE 391, 57 ALR 1). In the above case, it was said (pp 344, 348):

"Not a little confusion runs through the reports as to the effect of contributory negligence upon liability for nuisance. Statements appropriate enough in their application to nuisances of one class have been thoughtlessly transferred to nuisances of another. There has been forgetfulness at times that the forms of action have been abolished. and that liability is dependent upon the facts and not upon the name.

Confining ourselves now to the necessities of the case before us, we hold that whenever a nuisance has its origin in negligence, one may not avert the consequences of his own contributory negligence by affixing to the negligence of the wrongdoer the label of a nuisance.    *    *    *

"What we rule in this case is limited to a situation where negligence is the basis of the nuisance, and this for the reason that nothing more is called for by the facts. The defendant was not doing an act inherently unlawful when it paved the city streets. Power to regulate the streets had been given by the charter. What was dangerous and wrong did not inhere in the work contracted to be done, but in the manner of its doing. *Hyman* v. *Barrett*, 224 NY 436, 439 (121 NE 271, 18 NCCA 190). The nuisance was not absolute."

In 39 Am Jur, pp 475, 476, it is said:

"The cases are in substantial agreement that the ordinary rule of contributory negligence, which defeats recovery altogether in actions based on negligence as distinguished from nuisance, does not apply in case of an absolute nuisance. This view does not preclude the defendant from preventing or reducing recovery by showing that the damages sustained by the plaintiff were due, in whole or in part, to his own acts or conduct, or from defeating the action if the plaintiff and the defendant were joint wrongdoers, acting in concert, and not independently. But it has been held that where a nuisance causing a personal injury is not grounded on negligence, but is absolute, the fault on the part of the plaintiff which will bar recovery is fault so extreme as to be equivalent to invitation of injury, or, at least, indifference to consequences.    *    *    *

"According to some of the courts, where the nuisance has its origin in negligence, as distinguished from an absolute nuisance, contributory negligence is a defense."

In *Beckwith* v. *Town of Stratford,* 129 Conn 506 (29 A2d 775), the court had occasion to discuss the elements constituting nuisances. It was there said:

"Apart from nuisances which have their origin in accident, nuisances resulting in personal injury fall into 3 general classes. Beven, Negligence (4th ed), p 426, note. One class includes nuisances which result from conduct which is in itself a violation of law, and as to them it has been held on high authority that contributory negligence is not a defense, *Delaney* v. *Philhern Realty Holding Corporation,* 280 NY 461, 465 (21 NE2d 507); but with such nuisances we have no concern in this case. A second includes nuisances which are intentional, using that word as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance. The other class includes nuisances which have their origin in negligence, which in its essence is an absence of care. Nuisances falling in the second class are those which we characterize as absolute and against which contributory negligence is not a defense. To hold that contributory negligence should not be a defense as regards them and should be as to the last class of nuisances rests upon the essential difference in the nature of the wrong committed. Negligence consists in a failure to exercise due care, and to a nuisance grounded on negligence, contributory negligence is for that reason an appropriate defense. Winfield, Torts, p 501. Where, however, the essence of the wrong is conduct which is intentional, in the sense in which we have used that word, that conduct goes beyond a mere lack of proper care, and there is not the same balance of obligation between the duty of one person to guard another from an injury from such a lack and the duty of the other not to fail to exercise a like care in his own protection. See Bohlen, Studies in the Law of Torts, p 527. The fact that contributory negligence is not a defense as against reckless misconduct presents a somewhat analogous

situation. See *Nehring* v. *Connecticut Co.*, 86 Conn 109, 122 (84 A 301, 524, 45 LRA NS 896); *Rogers* v. *Doody*, 119 Conn 532, 535 (178 A 51); *Mooney* v. *Wabrek*, 129 Conn 302, 308 (27 A2d 631)."

In the case at bar the trial court found as a fact that the public nuisance was founded upon acts of negligence of defendants. It clearly appears from the record in this case that the repairing of M–43 was lawful as being contracted for by the State highway department; that in order to put the road in condition for paving it was necessary to haul dirt over M–50; and that the use of the loaded Euclids caused the holes and depressions in the road. The record supports the finding of the trial court that the nuisance was created through acts of negligence on the part of Garavaglia.

The judgment of the trial court in the case of Harry R. Denny is affirmed, with costs to both defendants.

North, C. J., and Dethmers, Butzel, Carr, Bushnell, Boyles, and Reid, JJ., concurred.