MELENDRES v SOALES

Docket No. 46219. Submitted November 13, 1980, at Detroit.—Decided
April 7, 1981. Leave to appeal applied for

Manuel Melendres brought an action against Laverne Soales,
Donald Soales, and Robert Soales for injuries sustained in an
accident which occurred on defendants' property, alleging that
defendants created an intentional nuisance. Defendants filed a
third-party complaint against Elixir Industries, plaintiff's em-
ployer, which was severed for purposes of trial. A verdict of no
cause of action was entered, Cass Circuit Court, James E. Hoff,
J. Plaintiff appeals, alleging that the defense, during its cross-
examination of him and during direct examination of its expert
witness, violated an order by the trial court made pursuant to
his motion *in limine* to suppress evidence of his status as an
illegal alien and that the trial court erred in failing to instruct
the jury that contributory negligence would be no defense
should it find that defendants created and maintained an
intentional nuisance. *Held:*

1. The trial court properly held that the issue of plaintiff's
illegal-alien status had not been injected by the defense into
the trial. However, its order excluding testimony on the issue
was unduly restrictive. The matter, while irrelevant on the

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur 2d, Aliens and Citizens §§ 43, 45.
  22 Am Jur 2d, Damages § 26.
  29 Am Jur 2d, Evidence § 251.
[2] 58 Am Jur 2d, Nuisances §§ 32, 141, 221.
  Contributory negligence or assumption of risk as defense to action
  for damages from nuisance—modern views. 73 ALR2d 1378.
[3] 58 Am Jur 2d, Nuisances § 32.
[4] 58 Am Jur 2d, Nuisances §§ 3, 32, 141.
[5] 58 Am Jur 2d, Nuisances §§ 3, 32.
  74 Am Jur 2d, Torts § 27.
  Am Jur 2d, New Topic Service, Comparative Negligence § 36.
[6] 58 Am Jur 2d, Nuisances §§ 22, 23, 32.
[7] 58 Am Jur 2d, Nuisances § 55.
[8] 58 Am Jur 2d, Nuisances § 224.
  81 Am Jur 2d, Workmen's Compensation § 22.

question of liability, was material and relevant on the issue of determining the present value of plaintiff's future lost earnings. The case is remanded for a new trial. The proceedings must be bifurcated, evidence of plaintiff's illegal-alien status being brought to the jury's attention only upon a determination of liability and for the purpose of assessing damages.

2. The trial court erred in failing to instruct the jury that contributory negligence was no defense. The doctrine of comparative negligence will not apply on retrial, should the jury determine that defendants created an intentional nuisance in fact.

Reversed and remanded.

1. EVIDENCE — RELEVANCY — ILLEGAL-ALIEN STATUS — DAMAGES.

Evidence of a plaintiff's status as an illegal alien in an action for damages for injuries resulting from an accident is not relevant to the question of liability but is material and relevant to the issue of damages in determining the present value of future lost earnings.

2. NUISANCE — INTENTIONAL NUISANCES — CONTRIBUTORY NEGLIGENCE — COURTS — JURY INSTRUCTIONS.

Contributory negligence is no defense to an action for damages where a jury finds that a defendant created and maintained an intentional nuisance which resulted in the damages, and failure by a trial court to so instruct the jury constitutes error.

3. NUISANCE — INTENTIONAL NUISANCES.

A nuisance may be intentional not because its creator intended to bring about the existence of the nuisance or a wrong resulting therefrom but because he intended to bring about the conditions which in fact are found to be a nuisance.

4. NUISANCE — INTENTIONAL NUISANCES — NEGLIGENCE — QUESTIONS OF FACT.

Whether a particular thing or act is a nuisance and whether a nuisance was created negligently or intentionally are questions of fact, unless reasonable minds cannot differ.

5. NEGLIGENCE — COMPARATIVE NEGLIGENCE — INTENTIONAL TORTS.

The doctrine of comparative negligence cannot be applied to reduce a defendant's potential liability for damages where he has intentionally committed a tort but does apply where he negligently created a nuisance.

6. NUISANCE — INTENTIONAL NUISANCES.

A person who intentionally creates a condition with knowledge

that it is substantially certain to interfere with another's person or property has created an intentional nuisance.

7. NUISANCE — INTENTIONAL NUISANCES — GOVERNMENTAL IMMU- NITY.

The bar of governmental immunity to an action for damages is inapplicable where a trier of fact determines that a governmental agency intended to bring about the conditions which in fact are found to be a nuisance.

8. NUISANCE — ASSUMPTION OF RISK — WORKERS' COMPENSATION.

The common-law doctrine of assumption of risk effectively has been abolished in Michigan in light of the doctrine's abrogation by the Supreme Court except in employment-related cases and subsequently enacted workers' compensation legislation.

*Goldsmith, Yaker & Goldsmith,* and *Karlin & Fleisher* (by *Richard S. Fleisher* and *Barbara J. Clinite) (David A. Novoselsky,* of counsel), for plaintiff.

*Taylor, Carter, Butterfield, Riseman, Clark & Howell, P.C.,* and *Grathwohl & Grathwohl,* for defendants.

Before: BRONSON, P.J., and J. H. GILLIS and CY- NAR, JJ.

BRONSON, P.J. Plaintiff filed suit in the Cass County Circuit Court seeking damages for an injury which rendered him a quadraplegic. The injury occurred when plaintiff dove from a dock into shallow water at a lodge owned by defendants. He hit his head on the lake floor and damaged his spinal cord. Plaintiff alleged that defendants' placement of the dock and failure to post "no diving" warnings constituted the creation of an intentional nuisance. Following a jury trial, a verdict of no cause of action was returned. Plaintiff now appeals as of right.

Defendants filed a third-party complaint against

Elixir Industries, who was plaintiff's employer. The third-party action was severed for purposes of trial and was to be handled after disposition of plaintiff's claim against defendants.

A brief statement of the testimony presented at trial follows. Other facts will be detailed where applicable to specific issues. Plaintiff's employer, Elixir Industries, rented defendants' lakefront property for an employee picnic. Plaintiff attended the picnic and was injured when he dove off a dock into shallow water. Testimony showed that there were no signs or markers indicating the depth of the water. Nor were signs posted forbidding, or warning against, diving. The dock in question was some 50 feet in length and extended approximately 40 feet into the water. Plaintiff observed three other people dive off the dock prior to his ill-fated plunge. The water in the lake was murky, which prevented divers from seeing the bottom.

Additional testimony indicated that plaintiff observed others in the water prior to his dive. Some of these people were standing in water well past the end of the dock, and the water at this point was only shoulder high. One witness stated that she saw plaintiff dive from the dock three or four times prior to the unlucky plunge which resulted in his paralysis. This witness further testified that plaintiff stood up in the lake following the earlier dives and the water came up to his waist.

Plaintiff was an illegal alien from Mexico. Prior to trial, his attorney moved *in limine* to suppress this fact. The trial court granted the motion stating:

"Now the plaintiff wants an *in limine* ruling from the Court that the defense not bring before—to the attention of the jury the fact that Mr. Melendres is in this country as an illegal alien, that motion is granted. That

doesn't mean that the defense cannot by way of cross-examination or otherwise show background of Mr. Melendres, where he was born, when he was born, when he came to South Bend from whence he came, they can do all of that. It's just you may not directly or even indirectly get before the jury and dwell on the fact that he's here as an illegal alien. It's irrelevant."

Plaintiff's first claim on appeal is that the defense violated this order and committed reversible error by various questions asked at trial. Plaintiff specifically objects on appeal to two questions in which he was asked how he came to the United States and where he walked across the border.[1] Additionally, plaintiff contends that a hypothetical question put to an expert witness by defense counsel concerning future wage loss—in which the witness was asked to assume plaintiff would not remain in this country—violated the order. An objection to this question was sustained on the basis that there was no evidence presented upon which the assumption could be made.

The trial court considered the incidents above in denying plaintiff's motion for a new trial. In its opinion the court held that the issue of plaintiff's status as an illegal alien had not been injected into the trial. We agree. Although it is conceivable

---

[1] The questions put to plaintiff were:

"*Q.* You stated that in 1974 you came to the United States; is that correct?

"*A.* Yes.

"*Q.* How did you come to the United States?

"*A.* Walking.

"*Q.* Where did you walk across?

"*Mr. Fleisher:* Objection, your Honor, immaterial and irrelevant—

"*Mr. Riseman (Interposing):* It's background, your Honor.

"*Mr. Fleisher:* Background as to what, your Honor?

"*Mr. Riseman:* Trying to find out about—

"*The Court (Interposing):* No dialogue between you two.

"The objection is sustained. I think it's irrelevant as to whether he walked across, sustained."

that a juror might have come to the conclusion that plaintiff was an illegal alien from the questions asked, the court's order specifically allowed the defense to go into plaintiff's background. None of the questions asked were of such a nature that the jurors would naturally surmise plaintiff's illegal status.

In any case the trial court's order was unduly restrictive.[2] While the matter of plaintiff's status as an illegal alien was clearly irrelevant on the question of liability, it was material and relevant to the issue of damages, specifically the present value of future lost earnings. Plaintiff's expert assumed for purposes of his computation, finding the present value of Mr. Melendres' lost earning capacity worth $206,800, that plaintiff would remain in the United States for the remainder of his working lifetime of 41 years. However, due to plaintiff's status as an illegal alien he was subject to deportation to Mexico at any time. The wages plaintiff could expect to receive in Mexico were significantly lower than those he received in this country. Under these circumstances, the jury had a right to know of plaintiff's illegal status when calculating damages.

As is detailed below, this case must be remanded for a new trial. Upon retrial, the proceedings must

---

[2] The trial court, itself, had some foreboding of this fact. Defense counsel objected to plaintiff's counsel being allowed to ask an expert witness a question about future wage loss premised on the assumption that plaintiff would have remained in the United States his entire working career. The court stated:

"Counsel, your objection is overruled. It's your case, tail with the hide, counsel, I may be inviting reversible error, I have an uneasy feeling that maybe you're pushing a little too far, but it's your case, you may proceed.

"It strikes me it isn't quite fair and it bothers me a little bit, nevertheless, the die is cast, I make the decision, illegal alien is out of the case.

"You may proceed."

be bifurcated. The jury will first be asked to deliberate the question of defendants' liability. During this phase of the proceedings no references to plaintiff's status as an illegal alien may be made. Moreover, although we are convinced that the questions said to show plaintiff's illegal status here were not prejudicial, to avoid even the suggestion of unfairness, they may not be asked during the liability phase of retrial. If the jury determines that defendants are liable for plaintiff's injuries, during the damages phase of the trial the defense may bring to the jurors' attention the fact of Mr. Melendres' status as an illegal alien.[3]

We agree with plaintiff's contention that the trial court erred in not instructing that contributory negligence was no defense to the action if the jury found that defendants created and maintained an intentional nuisance. In its opinion denying a new trial, the court stated its position that the nuisance was created by negligence so that contributory negligence remained a viable defense.

In *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521 (1952), the Supreme Court quoted from *Beckwith v Town of Stratford,* 129 Conn 506, 511; 29 A2d 775 (1942), which defined intentional nuisance as:

"A second [category of nuisance] includes nuisances which are intentional, using that word as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance."

In *Gerzeski v Dep't of State Highways,* 403 Mich

---

[3] Of course, plaintiff would be entitled to an instruction that his status as an illegal alien could only be considered by the jury insofar as it found it relevant to damages for loss of future earnings.

149, 161-162; 268 NW2d 525 (1978), this definition was again quoted with approval in Justice Moody's concurring opinion. While the justices in *Gerzeski* split on the issue of whether the doctrine of governmental immunity applies where the nuisance is not intentionally created, five justices agreed with the classification and definitions of "nuisance" as set forth in Justice Moody's opinion. See, also, *Affiliated FM Ins Co v Dep't of State Highways & Transportation,* 86 Mich App 203, 208-210; 272 NW2d 239 (1978), *lv den* 406 Mich 905 (1979).

The distinction between negligent and intentional nuisances is important because the defense of contributory negligence has been held to be inapplicable to nuisances of the intentional variety. *Denny, supra, Gerzeski, supra,* 161, *In re Woods Estate,* 49 Mich App 412, 415-416; 212 NW2d 240 (1973), *lv den* 391 Mich 759 (1974).

In this case, we are concerned with an alleged nuisance in fact. Unless reasonable minds cannot differ, whether or not a particular thing or act is a nuisance is a question of fact. *Rosario v City of Lansing,* 403 Mich 124, 138, 142; 268 NW2d 230 (1978), *Affiliated Ins Co, supra,* 209, fn 4. Similarly, unless reasonable minds cannot differ, whether a nuisance in fact was created negligently or intentionally is a question for the jury. *Gerzeski, supra, Woods Estate, supra, Affiliated Ins Co, supra.*

In this case, there is no dispute over whether the jury could have found that defendants created a nuisance in fact. Constructing a dock into shallow, murky water for the use of guests, without posting "no diving" signs or depth markers, could reasonably be found to create a dangerous condition which might result in injury. If the dock was intended solely for the use of boating, the jury

could find a nuisance based on the fact that there was no separation of the boating and swimming areas.

The testimony of one of the defendants, himself, could have led the jury to the conclusion that the nuisance was intentional in the sense this term is used in *Denny, supra:* that is, that the creator intended to bring about the conditions which are found to be a nuisance in fact. Laverne Soales testified that he did not post depth markers near the pier because they were unnecessary. He further stated that common sense would "not necessarily" have dictated the posting of "no diving" warnings on the dock. Laverne Soales also indicated that the failure to post warning signs was not because it was not considered but, rather, because "it was unnecessary". From this testimony a jury could conclude that defendants "intended to bring about the conditions which are in fact found to be a nuisance".

We must lastly determine whether the Supreme Court decision in *Placek v City of Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), adopting comparative negligence in Michigan, is applicable to a case in which the factfinder concludes the nuisance was intentionally created.[4] This is only a problem because of the manner in which the Supreme Court has chosen to define intentionally created nuisance. Where defendant intentionally commits a tort, comparative negligence is no defense which can serve to reduce his potential liability. The reason is clear from the

---

[4] If the jury concludes on retrial that negligently created nuisance in fact exists, the doctrine would apply. As the Court said in *Placek, supra,* 667:

"Therefore, we hold the rule announced today applicable to the instant case and all appropriate cases in which trial commences after the date of this opinion including those in which a retrial is to occur because of remand on any other issue."

very name of the comparative negligence doctrine. In such circumstances, defendant has simply not been negligent. There are no degrees of negligence to compare. A person's obligation to guard himself from injury caused by design is insignificant, if existent at all, compared to his obligation to guard himself from injury caused by another's simple lack of care.

An intentionally created nuisance is defined in terms of foreseeability of injury in most jurisdictions. A defendant who intentionally creates a condition with knowledge that it is substantially certain to interfere with plaintiff's property or person has established an intentional nuisance.[5] Prosser, Torts (4th ed), § 91, p 608. In this case, however, it was not a substantial certainty that defendants' acts would result in the creation of a condition causing plaintiff or any other person injury. Nonetheless, as Michigan has come to define an intentionally created nuisance, reasonable jurors could find the condition generated here to be precisely that. In *Gerzeski, supra,* the Supreme Court held that an intentionally created nuisance could be found on the following facts. The Department of State Highways' construction project on a portion of I-75 resulted in the creation of a pond covering some 12 acres of land. Upon completion

---

[5] In *In re Woods Estate, supra,* 416, I concurred in an opinion with the following language:

"Usually they [nuisances] are differentiated as being 'negligent nuisance' and 'intentional nuisance'. Perhaps the latter term is unfortunate. Manifestly the defendant in this case did not 'intend' that decedent Damon Woods come to his tragic death. The real distinction is whether the nuisance involved arises out of what is sometimes called 'simple' negligence or whether the lack of care and the lack of foreseeability is a breach of duty greater in kind than traditional simple negligence."

While this still seemed a viable distinction in light of *Denny, supra,* it no longer appears tenable given *Rosario, supra,* and *Gerzeski, supra.*

of the highway construction, the edge of the pond was trimmed with topsoil and seeded. Thereafter, two boys, aged 10 and 12, drowned in the pond after walking onto its apparently frozen surface. As in the instant case, the facts of *Gerzeski* do not show a condition in which injury was substantially certain to follow from the defendant's acts. Undoubtedly the Department of Highways should have fenced in the pond or posted warnings to the public of latent dangers. Nonetheless, the death of the two children ultimately seems to be the result of what is normally construed as negligence, rather than a species of intentional conduct.[6] However, Justice MOODY's opinion in *Gerzeski, supra,* 162, rejects this view:

"To hold the government immune from the consequences of its intentional acts which create a nuisance would be, as posited in his dissent by the Court of Appeals Judge THOMAS M. BURNS, unconscionable.

"It was the apparently frozen nature of this pond that created a nuisance. The state was held by the Court of Claims judge to have intentionally constructed the pond in the path of a warm water flow, the 'Bell drain'. This directly resulted in the pond's deceptive appearance and, in a sense, created a trap for those crossing its surface.

"Accordingly, the bar of governmental immunity is inapplicable when a trier of fact determines as in this case, that the alleged nuisance was intentional, *i.e.,* that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance."

---

[6] It may be that for the two justices in *Gerzeski, supra,* who really considered the distinction between intentionally and negligently created nuisance significant, the definition of intentionally created nuisance adopted had more to do with a desire to apply the doctrine of governmental immunity to the fewest possible number of cases. The definition may have been originally adopted to ameliorate the harshness of the contributory negligence doctrine. If so, this reason no longer justifies its existence.

In light of Michigan Supreme Court precedent, we hold defendants are not entitled to an instruction that, if the jury finds they created an intentional nuisance in fact, it may still consider plaintiff's comparative negligence in rendering its damages award.

There was testimony in this case that plaintiff knew the water in the lake was shallow by the time he made his ill-fated dive. At common law, a jury would have been allowed to consider whether plaintiff's conduct was of such a nature that he had voluntarily assumed the risk of a known danger as a possible defense. Prosser, Torts (4th ed), § 91, p 610. However, in *Felgner v Anderson,* 375 Mich 23, 55-56; 133 NW2d 136 (1965), the Michigan Supreme Court abrogated the doctrine of assumption of risk except in cases arising out of the employment relationship where the employer interposes as a defense that the employee has assumed the risk of a particular danger as obviously incident to his job or "perhaps" by express contractual assumption. In light of workers' compensation legislation, this effectively means the common-law doctrine of assumption of risk has been abolished.

In this case, we reach a result which we believe is mandated by Supreme Court precedent. At the same time, on the facts of this case, we think it inequitable that if the jury on retrial finds an intentionally created nuisance in fact as that term is defined in *Denny, supra,* and *Gerzeski, supra,* that defendants cannot interpose as a defense, possibly reducing their liability, plaintiff's negligent conduct. We believe the Supreme Court should either reconsider the concept of "intentionally created nuisance" or consider reviving the doctrine of assumption of risk for cases such as the one at bar.

Reversed and remanded for retrial.

J. H. GILLIS, J., concurs in the result only.