## HALL v DEPARTMENT OF STATE HIGHWAYS

Docket No. 49144. Submitted May 6, 1981, at Lansing.—Decided September 21, 1981. Leave to appeal applied for.

Leonard L. Hall brought an action against the State of Michigan, Department of Highways and Transportation, seeking damages for injuries received in an accident involving a collision with a highway guardrail. Following trial, the Court of Claims, Charles J. Falahee, J., found the defendant to be negligent in the maintenance of the guardrail, the plaintiff to be negligent in falling asleep at the wheel of his automobile, and established damages accordingly. Plaintiff appeals; defendant cross-appeals. *Held:*

1. The trial court properly considered the plaintiff's negligence in determining damages.

2. The trial court's finding that the defective condition of the guardrail did not constitute an intentional nuisance is supported by the record.

3. The trial court properly held that the guardrail was part of the improved portion of the highway and was included in the

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Highways, Streets, and Bridges §§ 402, 555.
57 Am Jur 2d, Negligence § 292.
Contribution or indemnity between joint tortfeasors on basis of relative fault. 53 ALR3d 184.

[2] 58 Am Jur 2d, Nuisances §§ 12, 13.

[3] 4 Am Jur 2d, Appeal and Error § 493.
58 Am Jur 2d, Nuisances §§ 140, 141.

[4] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 340, 341, 402.

[5, 6] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 343, 344, 402.
Liability of governmental entity or public officer for personal injury or damages arising out of vehicular accident due to negligent or defective design of highway. 45 ALR3d 875.
Liability and suability, in negligence action, of state highway, toll road or turnpike authority. 62 ALR2d 1222.

statutory exception to governmental immunity from tort liability.

4. The trial court's finding that the guardrail was a proximate cause of the plaintiff's injuries is supported by the record.

5. The trial court's finding that the defendant was negligent in failing to install safer guardrails is supported by the record. Affirmed.

1. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — HIGHWAYS.

A plaintiff's contributory negligence may be applied to reduce the amount of an award for injuries sustained in an automobile accident involving a collision with a defective guardrail maintained by the state.

2. NUISANCE — NUISANCE AT LAW — NUISANCE IN FACT.

Nuisances are classified as nuisances at law which are acts, occupations, or structures which are nuisances at all times and under any circumstances, regardless of locations or surroundings, and nuisances in fact which become nuisances because of circumstances and surroundings; nuisances in fact may be negligent or, where the creator of the nuisance intended to bring about the conditions which are in fact found to be a nuisance, intentional.

3. NUISANCE — NUISANCE AT LAW — NUISANCE IN FACT — TRIAL — APPEAL — COURT RULES.

The determination whether a nuisance is a nuisance at law or a nuisance in fact and, if a nuisance in fact, whether it is a negligent nuisance in fact or an intentional nuisance in fact is for the trier of fact, and such determination will not be set aside on appeal unless clearly erroneous (GCR 1963, 517.1).

4. GOVERNMENTAL IMMUNITY — HIGHWAYS — GUARDRAILS — STATUTES.

A highway guardrail is a part of the improved portion of a highway designed for vehicular travel for the purpose of applying the statutory exception to governmental immunity for tort liability involving the repair and maintenance of highways (MCL 691.1402; MSA 3.996[102]).

5. NEGLIGENCE — HIGHWAYS — GUARDRAILS — OUTMODED DESIGN.

The state may be held to be liable for injuries sustained by a motorist in a collision with a defective highway guardrail where the guardrail is found to be a proximate cause of the injury and the state is found to be negligent in permitting the guardrail to remain in place despite substantial technological advancements which rendered its design unsafe.

6. Highways — Duty to Repair — Defective Design.

A government agency which is charged with maintaining a highway is required to maintain the highway in reasonable repair and reasonably fit for travel including the correction of a defective design (MCL 691.1402; MSA 3.996[102]).

*Peter R. Barbara & Associates, P.C.* (by *Darrel Peters),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Carl K. Carlsen* and *Myron A. McMillan,* Assistants Attorney General, for defendant.

Before: M. J. Kelly, P.J., and Bronson and R. Max Daniels,* JJ.

M. J. Kelly, P.J. Plaintiff, Leonard L. Hall, appeals as of right from an opinion and order of the lower court, which awarded him a judgment of $150,998.86, for the negligence of defendant, cross-appellant State of Michigan, Department of Highways and Transportation. The judgment was based upon a finding that the defendant was negligent in the maintenance of a highway guardrail, the design of which could cause serious injuries to occupants of any vehicle striking the guardrail head-on. The trial court also found the plaintiff's negligence in permitting his vehicle to leave the highway just prior to the collision to constitute 75% of the responsibility for his injuries and thus reduced the total damages to the above-noted figure.

The plaintiff's cause of action arose from a one-car accident which occurred on February 18, 1973. During trial, the plaintiff's amended complaint alleged, *inter alia,* that defendant was negligent in failing to maintain Interstate 94 (I-94) in a reason-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ably safe manner by failing to correct a known hazard caused by the defective design of the guardrail struck by plaintiff's vehicle. The complaint also alleged that the guardrail constituted an intentional nuisance.

At the site of the plaintiff's accident, I-94 is a four-lane divided highway running east and west. The lanes are separated by a 40-foot wide median. Testimony during trial indicated that, at the time of the accident, the highway pavement was clear of ice or snow.

In the early hours of February 18, 1973, plaintiff was driving eastbound on I-94. As he approached the Michigan Avenue overpass in Jackson County, plaintiff apparently fell asleep at the wheel of his automobile. His vehicle left the pavement, traveled about 450 feet down the center of the median, and then went up the slight slope on the opposite side of the median where it struck the end of a guardrail. The guardrail struck by plaintiff's car had been installed to protect westbound traffic from possible collision with the bridge pier located in the center of the median. This guardrail was over 30 feet from the eastbound lanes.

Upon impact, the terminal end of the steel guardrail was driven through the automobile, entering just behind the right front tire, then crossing the passenger compartment and penetrating the driver's door. The guardrail traumatically amputated plaintiff's right leg a few inches below the knee. The plaintiff also suffered a severe fracture of his right femur near the hip joint. A passenger in the car was uninjured.

Substantial expert testimony was heard regarding the relative safety of the guardrail struck by the plaintiff with respect to other more recent designs. In its fact-findings, the lower court found

that the guardrail design was standard and considered acceptable when installed and continued to be viewed as acceptable until 1966. The court found that by 1967 defendant was aware that the end treatment used on the guardrail was dangerous and posed a substantial risk of injury or death to anyone striking it.[1] Based upon this fact-finding, the court found negligence in "failing to install the turned-down and buried guardrail-end treatment or other known safer designs for the several years that the knowledge existed preceding this accident". According to the trial court, the fact that plaintiff struck the departure end of a guardrail meant to protect westbound traffic was not significant, since cars traveling on high-speed highways could easily cross the median. The lower court also found plaintiff negligent in having fallen asleep at the wheel and permitting his vehicle to leave the highway. On appeal, the plaintiff raises two issues. The defendant, as cross-appellant, asserts three additional allegations of error.

I

The plaintiff first argues that the lower court erred in reducing its total damage award, based upon a finding that plaintiff's negligence was 75% of the accident's cause. It specifically is alleged

---

[1] The trial court found that the knive-edged type end shoe guardrail was installed when I-94 was constructed in 1961 or 1962. The guardrail remained under the jurisdiction and control of defendant, without modification, throughout the 11-year period prior to plaintiff's accident. According to plaintiff's experts, this type guardrail had been identified as being dangerous, and a number of states had adopted safer guardrail designs. Defendant's witness, on the other hand, testified that this type of guardrail was approved by the federal government until 1966. Finally, there was considerable disagreement among witnesses as to whether the departure end of a guardrail needed modification.

that the public policy considerations underlying the Supreme Court decisions in *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974), and *Tulkku v Mackworth Rees Division of Avis Industries, Inc,* 406 Mich 615; 281 NW2d 291 (1979), and this Court's decision in *Tulkku v Mackworth Rees Division of Avis Industries, Inc (On Remand),* 101 Mich App 709; 301 NW2d 46 (1980), require us to find that because the guardrail was a defective "safety device", the plaintiff's contributory negligence may nòt be applied to reduce his final award. We do not accept the proposed extension of the "safety device" rationale in this context.

In the above decisions, it was held that the defendant could not raise the defense of contributory negligence as a bar to a plaintiff's negligence action if the defendant had failed in its duty to provide adequate safety devices. *Stambaugh v Chrysler Corp,* 96 Mich App 166, 171-172; 292 NW2d 510 (1980), *Tulkku, supra,* 623.[2] We agree with the rationale and public policy consideration behind this limitation on the use of contributory or comparative negligence. However, the public policy to foster a contractor's or manufacturer's efforts to provide a safe working environment for plaintiff is not equally applicable to the facts of this case. In *Wade v State Highway Comm,* 92 Mich App 234, 238-239; 284 NW2d 522 (1979), this Court addressed the question of whether contributory negligence was available as a defense to an

---

[2] The Supreme Court's *Tulkku* opinion concluded:

"If we are to continue to foster the protection of the worker and to encourage manufacturers to take all reasonable precautions in designing and manufacturing safety devices, we cannot allow the discredited doctrine of contributory negligence to undermine these goals.

"We, therefore, hold that contributory negligence is no bar to recovery where evidence has been presented of defendant's causal negligence in the design or manufacture of a safety device".

action for injuries to a motorist caused by the allegedly negligent design of a bridge:

"In *Funk, supra,* the Court held that the defense of contributory negligence is inapplicable where a defendant employer breaches its duty to provide safety equipment resulting in injury to a plaintiff employee. The rationale behind this decision is evident from the following quote:

" 'Workmen such as the present plaintiff, who ply their livelihoods on ladders and scaffolds, are scarcely in a position to protect themselves from accident. They usually have no choice but to work with the equipment at hand, though danger looms large. The legislature recognized this and, to guard against the known hazards of the occupation, required the employer to safeguard the workers from injury caused by faulty or inadequate equipment. If the employer could avoid this duty by pointing to the concurrent negligence of the injured worker in using the equipment, the beneficial purpose of the statute might well be frustrated and nullified.' *Koenig v Patrick Construction Corp,* 298 NY 313, 318-319; 83 NE2d 133, 135 (1948). *Id.,* at 113-114.

"The plaintiff contends that the breach of the statutory duty to maintain highways in a reasonably safe condition, MCL 691.1402; MSA 3.996(102), is in the same category as above thus rendering the doctrine of contributory negligence inapplicable. We disagree.

"Initially we point out that a motorist who misuses a highway is answerable for his own negligence which could operate to bar recovery. *Detroit Bank & Trust Co v Dep't of State Highways,* 55 Mich App 131; 222 NW2d 59 (1974). Moreover, the critical factor in *Funk, supra,* was the employee's lack of choice in undertaking hazardous on-the-job activity. Here that factor is absent. The decedent could have used an emergency phone which was located some 500 feet away or could have waited for traffic to clear before moving from his position of safety. The record supports the lower court's finding that the decedent's injuries were caused by his own negligence."

Because the prohibition against the use of contributory negligence has been limited to cases involving a safe working environment, we hold that the trial court did not commit error in applying the plaintiff's negligence to reduce its award.

## II

The plaitniff also alleges as error the lower court's finding that the defective guardrail did not constitute an intentional nuisance. In *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 636; 178 NW2d 476 (1970), the Supreme Court identified the factors necessary for a finding of nuisance:

"Primarily, nuisance is a condition. Liability is not predicated on tortious conduct through action or inaction on the part of those responsible for the condition. Nuisance may result from want of due care (like a hole in a highway), but may still exist as a dangerous, offensive, or hazardous condition even with the best of care."

In *Rosario v City of Lansing,* 403 Mich 124, 132-133; 268 NW2d 230 (1978), the Supreme Court, citing *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959), classified nuisances as follows:

" 'From the point of view of their nature, nuisances are sometimes classified as nuisances per se or at law, and nuisances *per accidens* or in fact. A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property.

The number of nuisances per se is necessarily limited, and by far the greater number of nuisances are nuisances *per accidens.* For this reason whether or not a particular thing or act is a nuisance is generally a question of fact * * *.' "

Nuisances in fact are divided into two categories, consisting of intentional and negligent nuisances. *Gerzeski v Dep't of State Highways,* 403 Mich 149, 161; 268 NW2d 525 (1978). Justice BLAIR MOODY, JR., joined by four other justices, defined an intentional nuisance as a "nuisance created by conduct intended to bring about conditions which, in fact, constituted a nuisance * * *". *Id.,* The requirements for determining the presence of an intentional nuisance were summarized in *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521 (1952):

"A second [category of nuisance] includes nuisances which are intentional, using that word as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance."

See also *Melendres v Soales,* 105 Mich App 73; 306 NW2d 399 (1981).[3] Finally, as a category of nuisance in fact, an intentional nuisance requires factual resolution by the trier of fact, *Rosario, supra,* 133, *Gerzeski, supra,* 161, which will not be

---

[3] As in *Melendres,* the issue of intentional nuisance is of great importance in this case, since the defense of contributory negligence is unavailable to bar claims based upon such nuisances. *Denny, supra, In re Woods Estate,* 49 Mich App 412, 415-416; 212 NW2d 240 (1973), *lv den* 391 Mich 759 (1974). We also note that a previous panel of this Court has held that a nuisance "may be a result of negligence under [MCL] 691.1402; MSA 3.996(102)". *Stremler v Dep't of State Highways,* 58 Mich App 620, 629; 228 NW2d 492 (1975).

set aside by this Court unless it is found to be clearly erroneous. GCR 1963, 517.1.

The evidence presented during trial discloses that the court's factual finding on the nuisance issue was not clearly erroneous. Expert testimony heard below established that, at the time the disputed guardrail was installed, the device's design met all known safety requirements for highway barriers. Additionally, it is apparent from our review of the record that the defendant did not intend to create a defective condition alleged by the plaintiff to constitute an intentional nuisance. Although it is beyond argument that the state intended to install the guardrail itself, the defendant's complete lack of knowledge regarding its allegedly dangerous conditions (knife edged end shoe) supports the trial court's conclusion that intent sufficient to create an intentional nuisance was not established. We thus find no merit in the plaintiff's allegation of error.

## III

A. The first of defendant's three claims of error asserts that the trial court erred in concluding that the defendant was not governmentally immune from suit for the injuries caused in the plaintiff's collision with the subject guardrail. The basis for the defendant's claim was that the statute which limits governmental immunity for improperly maintained highways should not apply to defective guardrails because guardrails are not part of the "improved portion of the highway designed for vehicular travel". The statute, MCL 691.1402; MSA 3.996(102), provides in part:

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable

repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. * * * *The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel.* No action shall be brought against the state under this section except for injury or loss suffered on or after July 1, 1965. Any judgment against the state based on a claim arising under this section from acts or omissions of the state highway department shall be payable only from restricted funds appropriated to the state highway department or funds provided by its insurer."

In *Detroit Bank & Trust Co, supra,* 134, this Court addressed the identical question of whether a median guardrail was part of the "improved portion" of a highway under the above quoted statute. The Court compared the presence of such guardrails to highway shoulders and traffic signals, for which liability has been found, and held that guardrails were included within the state's ambit.[4]

---

[4] The Court held:

"The median did not magically appear between the paved portions of the divided highway. It was created or constructed by the state. The guardrail in the middle was manufactured to the department's specifications and installed by their contractors. We cannot but conclude that it is an 'improved portion' in the same sense the shoulders were held to be in *Johnson v Michigan,* 32 Mich App 37, 39; 188 NW2d 33, 35 (1971), in which we said:

" 'The shoulders of a highway are designed for vehicular traffic although not of the same character as vehicular traffic on the paved portion of the highway. We read the statutory duty of the state with respect to the repair of shoulders to be that the state is obligated to maintain the shoulders in reasonable repair so that they are reason-

See also *Van Liere v State Highway Dep't,* 59
Mich App 133, 136; 229 NW2d 369 (1975), for a
similar holding. We agree and thus hold the defen-
dant's allegation of error to be meritless.

B. The defendant next argues that it was error
to hold the state 25% responsible for the plaintiff's
injuries because "the only active ingredient in
plaintiff's accident was his failure to stay awake at
the wheel of the car he was driving". We disagree.

A plaintiff may not recover where his negligence
is the sole proximate cause of his injuries. *De-
Grave v Engle,* 328 Mich 565; 44 NW2d 181 (1950).
Nor is a defendant's negligence actionable unless
it is a proximate cause of injuries for which dam-
ages are sought. See *Johnson v Grand Trunk W R
Co,* 58 Mich App 708, 714; 228 NW2d 795 (1975).
There may be more than one proximate cause of a
plaintiff's injury, *Caldwell v Fox,* 394 Mich 401;
231 NW2d 46 (1975), *Placek v Sterling Heights,*
405 Mich 638; 275 NW2d 511 (1979), and the
question of proximate cause is one of fact to be
decided at the trial level. Finally, in *Weissert v
Escanaba,* 298 Mich 443, 452; 299 NW 139 (1941),
the Supreme Court defined proximate cause as
" 'that which in a natural and continuous se-
quence, unbroken by any new, independent cause,
produces the injury, without which such injury
would not have occurred * * *' ".

Applying these authorities to the facts of the
instant case, we hold that the lower court could

ably safe for their intended use as adjuncts of the paved portion of
the highway.'
    "Or as in *Lynes v St Joseph County Road Comm,* 29 Mich App 51,
59; 185 NW2d 111, 114-115 (1970):
    " 'Traffic signals which control the flow of traffic are an integral
part of the improved portion of the highway. The presence or absence
of such signals, as well as the conditions in which they are main-
tained, directly relates to the statutory duty imposed upon the defen-
dant to maintain the highway in a condition safe and fit for travel.' "

find the defective condition of the guardrail to be a proximate cause of the plaintiff's injuries. It has been held that the mere lapse of time "does not foreclose the cause of an injury from being its proximate cause". *Michigan Sugar Co v Employers Mutual Liability Ins Co of Wisconsin,* 107 Mich App 9; 308 NW2d 684 (1981), citing *Parks v Starks,* 342 Mich 443, 447; 70 NW2d 805 (1955).[5] Further, the intervention of plaintiff's negligent act does not foreclose a finding of proximate cause. The evidence below supports fully the trial court's conclusion that the guardrail, which represented the most advanced safety design at the time of its installation, was no longer considered safe as of 1966 or 1967. There is also substantial support for a finding that the defendant was negligent in permitting the guardrail to remain in place, despite substantial technological advancements which rendered the prior design outmoded. Thus, the defendant's claim of error is not persuasive.

C. Defendant's final claim of error is that the trial court improperly found it to be negligent by comparing its actions to an improper standard of care. It is argued that the trial court's decision would place upon the defendant the impossible burden of changing any highway appurtenance whenever a new or better design is developed.

In *Stremler v Dep't of State Highways,* 58 Mich App 620, 627-628; 228 NW2d 492 (1975), the Court noted the continuing duty of a government agency

---

[5] In *Parks,* the Supreme Court quoted from *Solomon v Continental Baking Co,* 172 Miss 388, 393; 160 So 732 (1935), for the following rule:

"Where an action of negligence is a substantial factor in bringing about an injury, it does not cease to be a legal and proximate cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act. 2 Restatement, Torts, §§ 440-442, 447."

to correct defects arising from the original design or construction of a highway:

"Conditions in streets and public places which render the use thereof dangerous or inconvenient present issues referable to the law of negligence. 18 McQuillin, Municipal Corporations (3d ed rev), § 53.47, p 248. When the defect in a public right of way is a natural consequence of negligence in original construction, there need not be notice, actual or constructive, of the duty to repair where the governmental entity was charged with notice from the beginning. 19 McQuillin, *supra*, § 54.105a, pp 293, 294. Defective design may lead to a continuing obligation to correct such defect and, should a governmental entity fail to do so, when on notice that such is necessary, liability may be based upon its negligence in failing to correct the defect. *Hargis v City of Dearborn Heights,* 34 Mich App 594, 601; 192 NW2d 44, 48 (1971) * * *." (Footnote omitted.)

See also *Van Liere, supra,* 138, and *Weckler v Berrien County Road Comm,* 55 Mich App 7, 11; 222 NW2d 9 (1974).

We do not view the above authorities as requiring the state to reconstruct a highway whenever a safety advancement is made. Rather, the focus of MCL 691.1402; MSA 3.996(102) is to require government agencies to maintain highways in *"reasonable* repair" and to provide roads which are *"reasonably* safe and fit for travel". The determination of reasonableness must necessarily be made by overview of the factors of a given case, such as the danger imposed by the defective article or lack of safety device, the increase in safety provided by the new device or design, the cost of repair or installation, and others. Viewing, as a whole, the facts of this case, we do not find error in the trial court's decision finding that the defendant was negligent in failing to install safer guardrails.

Affirmed. No costs.