DINGER v DEPARTMENT OF NATURAL RESOURCES

Docket No. 70877. Submitted June 25, 1984, at Grand Rapids.—Decided November 18, 1985.

Wayne S. Dinger was rendered a quadriplegic when he broke his neck while diving from a bridge into Swan Creek Pond in the Allegan State Game Area. Dinger brought a tort action in Allegan Circuit Court against the Allegan Board of County Road Commissioners, alleging negligence on the part of the board which maintained, controlled and repaired the bridge from which he dove. Dinger brought a similar action in the Court of Claims against the Department of Natural Resources, alleging that the department was negligent in the construction or maintenance of the swimming area in Swan Creek Pond or, in the alternative, that the maintenance of that swimming area adjacent to the bridge constituted a nuisance. The two actions were jointly tried, with a jury as the trier of fact in the suit against the county agency and the trial court, George R. Corsiglia, J., sitting as the Court of Claims, as the trier of fact in the suit against the state agency. At the trial, plaintiff testified that he had checked the water depth before diving from the bridge but that on his third dive from the bridge he struck the bottom and broke his neck. After the plaintiff had rested, counsel for the county road commissioners announced that an eyewitness had been discovered. The trial court, after

REFERENCES

Am Jur 2d, New Topic Service, Comparative Negligence §§ 1 et seq.

Am Jur 2d, Municipal, School, and State Tort Liability §§ 156 et seq., 293 et seq.

Am Jur 2d, Negligence §§ 101 et seq.

Am Jur 2d, Nuisances §§ 5 et seq.

Application of comparative negligence in action based on gross negligence, recklessness, or the like. 10 ALR4th 946.

Liability of swimming facility operator for injury to or death of diver allegedly resulting from hazardous condition in water. 85 ALR3d 750.

Modern development of comparative negligence doctrine having applicability to negligence actions generally. 78 ALR3d 339.

Public swimming pool as nuisance. 49 ALR3d 652.

determining that the defendants had exercised reasonable diligence and the testimony of the witness was relevant and would not be cumulative, ruled that the new witness could testify. Following a delay for the taking of depositions, the witness testifed that after each of his first two dives plaintiff had indicated that he had hit the bottom. The jury returned a verdict of no cause of action in the plaintiff's action against the county. The trial court, sitting as the Court of Claims, found that the Swan Creek Pond swimming area was an intentional nuisance in fact, but that plaintiff's wilful and wanton misconduct in diving under those circumstances precluded any recovery on the nuisance count. As to the negligence count, the court held that the state was not immune from suit, that the negligence of the Department of Natural Resources in maintaining the swimming area was a proximate cause of plaintiff's injuries and, ultimately, that the plaintiff's damages for those injuries were $1,911,732. The damage award was reduced by 95 percent due to plaintiff's comparative negligence. Plaintiff appealed. Defendant cross-appealed. *Held:*

1. The intentional nuisance exception to governmental immunity continues to be recognized in Michigan.

2. The Department of Natural Resources properly raised the defense of wilful and wanton misconduct.

3. The trial court's findings of the maintenance of an intentional nuisance by defendant and of wilful and wanton misconduct by plaintiff were not clearly erroneous.

4. While the trial court's dismissal of the nuisance count on the basis of plaintiff's wilful and wanton misconduct was in accordance with the general rule found in other jurisdictions, the policy of this state is that liability should be apportioned on the basis of fault. Accordingly, the trial court, instead of holding that plaintiff's wilful and wanton misconduct acted as an absolute bar to recovery, should have determined the liability for plaintiff's injuries properly attributed to each party's fault.

5. The trial court erred in holding that the defendant was not entitled to governmental immunity on plaintiff's negligence claim, since Swan Creek Pond is part of a state recreational facility authorized or mandated by the constitution or by statute and it was not proprietary in nature.

6. The trial court properly permitted the eyewitness discovered during trial to testify.

7. The trial court, on remand, should further explain the means by which it calculated damages and refrain from reduc-

ing the amount of damages because of income tax consequences.

8. The Court of Claims judgment interest statute is not unconstitutional.

Affirmed in part, reversed in part, and remanded.

1. NUISANCE — INTENTIONAL NUISANCE — GOVERNMENTAL IMMUNITY.

Governmental immunity is not an available defense to a claim of damages arising out of a common law intentional nuisance caused by a governmental unit.

2. NUISANCE — NUISANCE AT LAW — NUISANCE IN FACT.

Nuisances are classified as nuisances at law, which are acts, occupations, or structures which are nuisances at all times and under any circumstances, regardless of locations or surroundings, and nuisances in fact, which become nuisances because of circumstances and surroundings; nuisances in fact may be negligent or, where the creator of the nuisance intended to bring about the conditions which are in fact found to be a nuisance, intentional.

3. NEGLIGENCE — WILFUL AND WANTON MISCONDUCT.

Wilful and wanton misconduct is distinguished from ordinary negligence by an intent to harm or by an indifference of a defendant in the presence of the probability of harm which is tantamount to a willingness that the harm occur.

4. NEGLIGENCE — WILFUL AND WANTON MISCONDUCT — INTENTIONAL NUISANCE — DAMAGES — REDUCTION OF DAMAGES — COMPARATIVE NEGLIGENCE.

Wilful and wanton misconduct by a plaintiff which leads in part to plaintiff's injuries will not absolutely bar plaintiff's recovery on a claim based upon defendant's maintaining of an intentional nuisance; rather, the trier of fact should reduce the defendant's liability by the amount that the plaintiff's injuries are properly attributed to the plaintiff's fault; the evaluation of the degree to which injuries are attributed to the defendant's intentional nuisance and to the plaintiff's wilful and wanton misconduct should be made separately from the determination of comparative negligence on any negligence claims.

5. NEGLIGENCE — GOVERNMENTAL IMMUNITY — GOVERNMENT FUNCTION — RECREATIONAL FACILITIES.

The creation and maintenance of swimming areas in a recreational park by the Department of Natural Resources is part of the system of state recreational facilities and is mandated or authorized by the constitution or by statute; accordingly, where

such swimming area is not proprietary in nature, the state is immune from liability arising out of any negligent act associated with the creation or maintenance of the swimming area.

*Vlachos, Jenkins & Hurley* (by *John R. Hurley* and *James E. Vander Roest)*, for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Wallace T. Hart,* Assistant Attorney General, for defendant.

Before: R. M. MAHER, P.J., and BRONSON and G. R. McDONALD,* JJ.

R. M. MAHER, P.J. On August 14, 1977, plaintiff, then a healthy 18-year-old man, dove from the southeast abutment of the 118th Avenue Bridge in Allegan County into the Swan Creek Pond. The dive proved disastrous, as plaintiff felt his head strike something in the water and heard his neck "pop". Since that date, plaintiff has been a quadriplegic.

Plaintiff brought this action, and a similar one against the Allegan Board of County Road Commissioners, seeking damages for the accident which occurred in the Allegan State Game Area. The trials were consolidated and ended in a jury verdict of no cause of action against the Allegan Board of County Road Commissioners and a bench finding of defendant's liability to plaintiff for negligence. The court originally found plaintiff's damages to be $1,441,732 and reduced them by 95 percent due to plaintiff's comparative negligence. The finding of the damages was subsequently altered to be $1,911,732, and was then again reduced by 95 percent. The trial court also found that defendant had been guilty of creating and maintaining an intentional nuisance but found that

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff was barred from recovering under this claim because he was himself guilty of willful and wanton misconduct in making the dive. Plaintiff appeals from the latter ruling, from the amount of damages found by the trial court, and from various other rulings. Defendant cross-appeals from the court's finding that defendant's maintenance of Swan Creek Pond as a recreation area was not a governmental function entitling defendant to governmental immunity with respect to plaintiff's negligence claim and from the court's award of damages.

The evidence presented at trial by plaintiff included plaintiff's testimony that he, a cousin, Joseph Slevats, and a friend, Stacy Richardson, parked their car in a parking lot on the northeast side of the 118th Avenue Bridge and proceeded to the south side of the bridge. On the way, plaintiff saw and read a sign which stated that diving and fishing from the bridge were prohibited. Plaintiff did not refrain from diving, because he thought the sign was only to prevent traffic hazards. Plaintiff testified that, before diving, he carefully checked the water into which he and his companions were going to be diving by donning snorkling equipment and swimming about to check the water's depth. Plaintiff also testified that he did not touch the bottom of the pond on either of his first two dives into the pond. It was established that plaintiff had Red Cross certification in swimming up to the level just below the lifeguard level. Plaintiff's testimony was supported by Slevats and Richardson, although neither of them could recall plaintiff's testing the water's depth before they began diving. Both men had testified at their depositions that no one had gone into the water to make sure that it was safe to dive before the men began diving.

At the end of testimony on August 11, 1982, plaintiff rested. Trial counsel for the Allegan Board of County Road Commissioners then indicated that he had been informed only minutes previously of the existence of an eyewitness. The road commission then rested subject to the court's ruling on the newly-discovered witness. The DNR had not yet rested.

The next morning, the discovery of the new eyewitness, William Wamack, was discussed. It was established that no one had been aware of Wamack's existence, and the court ruled that each of the defendants had exercised reasonable diligence. The court also found that Wamack's testimony would be very relevant and would not be cumulative. Defendants were granted permission to call Wamack and his wife as witnesses, but the Wamacks did not testify until after their depositions had been taken. At trial, which resumed several days later, William Wamack testified that he was at the Allegan State Game Area when plaintiff was injured. He stated that he witnessed plaintiff diving from the southeast bridge abutment wall and that, after plaintiff's first dive, he heard plaintiff say to his companions, "Damn, I hit the bottom". Wamack saw abrasions on plaintiff's chest as if he had scraped a gravel bottom. Plaintiff then dove a second time, this time telling his friends that he had hit the bottom with the "forearm-elbow-hand area". The Wamacks left the immediate area before plaintiff's third and final dive, but were called back due to plaintiff's injury. Mary Wamack testified that she was not in 'the same vicinity as her husband and so neither saw plaintiff dive nor heard him speak afterwards. Because she was a registered nurse, she tended plaintiff until ambulance personnel took over. She could

not recall seeing an abrasion on plaintiff's chest or a large lump on his forehead.

After testimony, the trial court found that defendant DNR was guilty of creating and maintaining an intentional nuisance but barred any recovery by plaintiff on this count due to his willful and wanton misconduct. Both parties challenge the legal and factual underpinnings of these rulings on appeal.

As preliminary matters, we find that the Supreme Court's decision in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), did not abolish the common law intentional nuisance exception to governmental immunity recognized in *Rosario v City of Lansing,* 403 Mich 124; 268 NW2d 230 (1978), and *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978). See *Veeneman v Michigan,* 143 Mich App 694; 373 NW2d 193 (1985). We also reject plaintiff's contention that defendant waived the defense of willful and wanton misconduct by failing to properly raise it. Defendant's answer to plaintiff's second amended complaint alleged as an affirmative defense that plaintiff failed to take any precautionary measures to determine whether the depth of the water or condition of its bottom was suitable for diving, that plaintiff was fully aware of the prohibition against diving from the bridge, and that plaintiff knew it was dangerous to dive but did so anyway, in reckless disregard of the consequences. The trial court found that defendant was guilty of creating and maintaining an intentional nuisance under the following analysis:

"Applying the above definitions to the evidence adduced at trial, this Court concludes that the Department of Natural Resources created and maintained an intentional nuisance in fact. The bridge structure from

which Plaintiff dove and the shallow dark waters into which he entered comprised a hazardous condition, primarily because of the proximity to the recreational area created and maintained by the Department of Natural Resources. The bridge and the abuttments *[sic]* were an inviting diving platform for persons attracted to the Swan Creek area. The bridge is within a short swim and eyesight of a beach, boat launch and other recreational facilities by the bridge.

"The Department of Natural Resources was well aware of the dangers posed by the bridge and the shallow waters several years prior to Plaintiff's accident. Area Department of Natural Resources employees knew the waters were shallow and dark near the bridge structure. They also knew that individuals would dive and jump from the bridge. They even occasionally warned these persons verbally of the dangers inherent in this activity. However, in spite of this special knowledge, the Department of Natural Resources did not adopt rules or regulations prohiting *[sic]* this activity nor did they take any other steps to deny access to the bridge structure by swimmers and potential divers.

"For all the reasons noted herein this Court concludes that the site of this accident constituted an intentional nuisance in fact at the time Plaintiff was injured. The Department of Natural Resources brought about this condition by creating the recreational and swimming facilities of Swan Creek and by neglecting to effectively curb the use of the bridge as a diving platform despite its knowledge of such use.

"Prior, during, and subsequent to the year 1977, 118th Avenue and the Swan Creek Bridge were maintained, controlled, and repaired by the Allegan County Road Commission. 118th Avenue, including the bridge, was certified by the Road Commission to the State of Michigan, Department of Transportation, as a county primary road. * * *.

* * *

"The Department of Natural Resources takes the position that since there was no local ordinance prohibiting such activity and since they did not have control of the bridge there was no way to effectively control use that they thought to be dangerous. However, the waters

of the pond were under their jurisdiction and they adopted no rule or regulation prohiting *[sic]* this dangerous activity when such a rule or regulation would have been enforceable by its officers."

Defendant now argues that these findings are clearly erroneous. However, after examining the voluminous trial transcript and the trial court's carefully drafted opinion, we cannot agree. We also find that these facts clearly describe the condition which constitutes the tort of "intentional nuisance", a tort recognized to exist as a matter of law in *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521 (1952), as interpreted in Justice Moody's opinion in *Gerzeski v Dep't of State Hwys, supra.* This definition has been succinctly stated in *Hall v Dep't of State Highways,* 109 Mich App 592, 599-600; 311 NW2d 592 (1981), *lv den* 413 Mich 942 (1982):

"In *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 636; 178 NW2d 476 (1970), the Supreme Court identified the factors necessary for a finding of nuisance:

" 'Primarily, nuisance is a condition. Liability is not predicated on tortious conduct through action or inaction on the part of those responsible for the condition. Nuisance may result from want of due care (like a hole in a highway), but may still exist as a dangerous, offensive, or hazardous condition even with the best of care.'

"In *Rosario v City of Lansing,* 403 Mich 124, 132-133; 268 NW2d 230 (1978), the Supreme Court, citing *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959), classified nuisances as follows:

" ' "From the point of view of their nature, nuisances are sometimes classified as nuisances per se or at law, and nuisances *per accidens* or in fact. A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circum-

stances, regardless of location or surroundings. Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. The number of nuisances per se is necessarily limited, and by far the greater number of nuisances are nuisances *per accidens.* For this reason whether or not a particular thing or act is a nuisance is generally a question of fact * * *.' "

"Nuisances in fact are divided into two categories, consisting of intentional and negligent nuisances. *Gerzeski v Dep't of State Highways,* 403 Mich 149, 161; 268 NW2d 525 (1978). Justice BLAIR MOODY, JR., joined by four other justices, defined an intentional nuisance as a 'nuisance created by conduct intended to bring about conditions which, in fact, constituted a nuisance * * *'. *Id., [sic]* The requirements for determining the presence of an intentional nuisance were summarized in *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521 (1952):

" 'A second [category of nuisance] includes nuisances which are intentional, using that word as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance.' "

After comparing the court's findings of fact in this case with this definition, and with the extremely similar factual situations found to be intentional nuisances in such cases as *Melendres v Soales,* 105 Mich App 73; 306 NW2d 399 (1981), *lv den* 413 Mich 916 (1982), and *Radloff v Michigan,* 116 Mich App 745; 323 NW2d 541 (1982), *remanded for reconsideration on other grounds* 417 Mich 894; 330 NW2d 692 (1983), we find that the trial court did not err in ruling that defendant had created and maintained an intentional nuisance.

The trial court also found that plaintiff had been

guilty of willful and wanton misconduct. In reaching this legal conclusion, the trial court made the following factual findings: 1) plaintiff hit the bottom of the pond after each of his first two or three dives; 2) plaintiff did not adequately test the depth of the water into which he would be diving; and 3), as a trained diver and swimmer, plaintiff should have discovered that the depth of the water ranged from only 3 feet to 5 feet 7 inches. Plaintiff argues on appeal that these findings are premised almost entirely upon William Wamack's testimony and that they should be found to be clearly erroneous because Wamack was not a credible witness. However, the trial court was able to fully observe Wamack while he testified and was, therefore, in a superior position to judge his credibility. Furthermore, nothing in Wamack's testimony was inherently incredible or worthy of disbelief. Finally, we note that plaintiff's own claim that he carefully examined the depth of the water before diving was unsupported, even by his cousin and friend.

Plaintiff also argues that, even if Wamack is found to be credible and the trial court's findings of fact not to be clearly erroneous, legally this conduct constituted no more than negligence. We disagree. In *Burnett v City of Adrian,* 414 Mich 448; 326 NW2d 810 (1982), the Supreme Court discussed the concept of willful and wanton misconduct in an effort to distinguish it from ordinary negligence. The Court first noted the test for willful and wanton misconduct which had been adopted in *Gibbard v Cursan,* 225 Mich 311, 322; 196 NW 398 (1923):

"(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at

hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." 414 Mich 455, fn 2.

The Court then stated:

"*Gibbard* is a well-reasoned case whose three-element formula for determining willful and wanton misconduct, however, is poorly stated. If the three-prong test is read in the context of the instructive analysis which precedes it in *Gibbard,* it becomes evident that the rule of the case is that willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does. Willful and wanton misconduct is not, as the *Gibbard* Court observed, a high degree of carelessness. The poorly phrased three-prong test for willful and wanton misconduct in *Gibbard* is cast entirely in language of ordinary negligence until, in the third element, it is said that it must be shown that an injury 'is likely'. It is in that concept—the notion that in the circumstances of a given case the injury is probable, or to be expected, or likely—that is found the requisite indifference to harm tantamount to a willingness that it occur, if not a specific intent that it does, which distinguishes willful and wanton misconduct from ordinary negligence." (Footnote omitted.) 414 Mich 455-456.

In this case, plaintiff's conduct certainly presaged a probable injury, given the court's finding that plaintiff dove three times into water which he knew to be shallow because he had already struck the bottom twice. While plaintiff obviously did not intend to injure himself, he displayed an "indifference to harm tantamount to a willingness that [the harm] occur".

Having found that defendant was guilty of creating and maintaining an intentional nuisance and that plaintiff was guilty of willful and wanton

misconduct, the trial court ruled that plaintiff's conduct completely barred him from recovering under his nuisance claim. Although Michigan law has never reached this conclusion, the trial court concluded that "if one encounters a nuisance and then acts [wantonly] or recklessly there should be no recovery". The trial court's position is supported by a number of authorities in other jurisdictions. See 58 Am Jur 2d, Nuisances, § 223, pp 826-827; 73 ALR2d 1378, § 7, pp 1397-1398. However, after carefully considering these authorities and the current state of Michigan law, we conclude that the better approach is to permit the trier of fact to consider both the tortfeasor's fault in creating or maintaining an intentional nuisance and the plaintiff's fault in approaching that nuisance in willful and wanton disregard of the high probability of harm and then to determine the degree to which each party's fault proximately caused the ultimate injury. This position is supported by Judge Bronson's well-reasoned opinion in *Melendres v Soales, supra.* In *Melendres,* Judge Bronson concluded that the newly-adopted doctrine of comparative negligence was not applicable to a case in which the fact finder has concluded that a nuisance was intentionally created:

"Where defendant intentionally commits a tort, comparative negligence is no defense which can serve to reduce his potential liability. The reason is clear from the very name of the comparative negligence doctrine. In such circumstances, defendant has simply not been negligent. There are no degrees of negligence to compare. A person's obligation to guard himself from injury caused by design is insignificant, if existent at all, compared to his obligation to guard himself from injury caused by another's simple lack of care." 105 Mich App 81-82.

In the present situation, however, where degrees

of fault may be compared, and where a person's
obligation to guard himself from injury is signifi-
cant, comparison is warranted. The definitions of
both intentional nuisance and willful and wanton
misconduct, cited earlier in this opinion, indicate
the similarity in the conduct involved and the
possibility of intelligent comparison. We also note
that the Supreme Court's reasons for adopting
comparative negligence apply as well in this situa-
tion:

"The doctrine of pure comparative negligence does
not allow one at fault to recover for one's own fault,
because damages are reduced in proportion to the con-
tribution of that person's negligence, whatever that
proportion is. The wrongdoer does not recover to the
extent of his fault, but only to the extent of the fault of
others. To assume that in most cases the plaintiff is
more negligent than the defendant is an argument not
based on equity or justice or the facts. What pure
comparative negligence does is hold a person fully
responsibile for this or her acts and to the full extent to
which they cause injury. That is justice." *Placek v
Sterling Heights,* 405 Mich 638, 661; 275 NW2d 511
(1979), quoting from *Kirby v Larson,* 400 Mich 585, 645;
256 NW2d 400 (177).

We therefore find that the trial court erred by
finding that plaintiff was barred from recovering
under his intentional nuisance claim. Because the
trial court acted as trier of fact in this case, we
remand to the court to permit it to determine
from the evidence the liability for plaintiff's inju-
ries properly attributed to the parties' fault. We
caution the trial court that this evaluation must
be made separately from the comparison of negli-
gence made in its analysis of plaintiff's negligence
claim.

Defendant argues in its cross-appeal that the
trial court erred by concluding that defendant's

maintenance of Swan Creek Pond as a recreation area was not a governmental function and therefore defendant was not entitled to governmental immunity with respect to plaintiff's negligence claim. Defendant also argues that the trial court's finding that defendant was liabile for five percent of plaintiff's injuries is clearly erroneous. We do not reach the second claim because we find that defendant was immune under the authority of *Ross v Consumers Power Co (On Reh), supra.* The Swan Creek Pond was part of the system of state recreational facilities either expressly or impliedly mandated or authorized by the constitution and statute and was not proprietary in nature. 420 Mich 591.

Plaintiff argues that the trial court abused its discretion by permitting the Wamacks, in particular William Wamack, to testify. However, it is apparent from the record that there had been no previous indication that these eyewitnesses existed and that their testimony was both highly relevant and not cumulative. Finally, we note that, even on appeal, plaintiff has not demonstrated any means by which he would have impeached William Wamack had he had the additional time originally contemplated by the pretrial discovery order.

Plaintiff next argues that the trial court abused its discretion by refusing to permit plaintiff's expert witness to testify with respect to whether or not plaintiff had been negligent. We disagree. The trial court's stated reasons for excluding this testimony were proper.

Both parties challenge the trial court's award of damages. After reviewing the court's findings and the testimony of the only witness who testified on the subject, we conclude that a remand is necessary to allow the court to more fully explain the source of the figures used by the court before we

can properly review this issue. In addition, on remand the court is to follow the direction of this Court in *Gorelick v Dep't of State Highways,* 127 Mich App 324, 341-343; 339 NW2d 635 (1983), and refrain from reducing the amount of damages in light of income tax consequences. We retain jurisdiction.

Plaintiff's final claim, that the Court of Claims judgment interest statute is unconstitutional, is without merit. *Sweetman v State Highway Dep't,* 137 Mich App 14, 28; 357 NW2d 783 (1984); *Henley v Dep't of State Highways & Transportation,* 128 Mich App 214, 220-223; 340 NW2d 72 (1983).

Affirmed in part; reversed in part. Remanded for proceedings consistent with this opinion. We retain jurisdiction.