GARCIA v CITY OF JACKSON

Docket No. 84513. Submitted January 22, 1986, at Lansing. Decided
     June 2, 1986. Leave to appeal applied for.

     Javier Garcia, while swimming in the Grand River in the vicinity
        of Holton Dam in Jackson, Michigan, drowned when he was
        sucked into a 5 × 10 foot submerged conduit connected to the
        dam and dragged under water for 2,000 feet. Manuel Garcia,
        Sr., individually and as personal representative of the dece-
        dent's estate, and other plaintiffs filed suit in Jackson Circuit
        Court against defendant, City of Jackson. Plaintiffs' complaint
        alleged nuisance per se and nuisance in fact with regard to the
        dam's conduit opening, which did not have a protective grating.
        Defendant moved for summary judgment, asserting that plain-
        tiffs failed to state a claim upon which relief can be granted on
        the basis that the recreational use statute, MCL 300.201; MSA
        13.1485, barred plaintiffs' nuisance claims. The trial court, James
        G. Fleming, J., granted defendant's motion, but also granted
        plaintiffs leave to amend their complaint. Plaintiffs filed an
        amended complaint which contained one count of nuisance per se.
        Defendant again moved for summary judgment, contending that
        the suit was still barred by the RUS. A hearing was scheduled for
        this motion, but the record contained no reference to the trial
        court's disposition of this motion. In any event, plaintiffs filed a
        second amended complaint which was identical to the first
        amended complaint except that the caption read "Wilful Wan-
        ton [sic] Misconduct of the Owner of Holton Dam, City of
        Jackson" instead of "Nuisance per se." Defendant then moved
        for summary judgment on the ground that no material issue of
        fact existed and that it was entitled to judgment as a matter of
        law. The trial court treated this motion as one seeking sum-
        mary judgment on the basis of governmental immunity and
        granted summary judgment in favor of defendant, after ruling
        that plaintiffs failed to support a claim of intentional tort to
        overcome the defense of governmental immunity. The trial
        court also concluded that the dam did not fall within the

REFERENCES

Am Jur 2d, Nuisances §§ 12, 13, 23, 32, 34.
Punitive damages in actions based on nuisance. 31 ALR3rd 1346.

"public building" exception to governmental immunity. Plaintiffs appealed. *Held:*

1. Claims of nuisance per se and intentional nuisance in fact are not barred by governmental immunity.

2. To establish a claim of intentional nuisance in fact against a governmental agency, a plaintiff must show that (1) the condition complained of is a nuisance and (2) the governmental agency intended to create the condition.

3. An omission to act by a defendant may constitute an intent to create a nuisance in fact.

4. Plaintiffs' allegations that defendant knew of the specific danger in this case because of an earlier incident wherein another boy drowned under the same circumstances and that defendant failed to erect a grating over the conduit's opening, provide proper warnings, and implement safety regulations after the earlier drowning incident sufficiently stated a claim of intentional nuisance in fact which evades the defense of governmental immunity.

5. Plaintiffs' allegation of defendant's failure to act following the earlier drowning incident in the face of a public outcry constituted an allegation of wilful and wanton misconduct on defendant's part which, if proved, removes this case from the scope of the RUS. Plaintiffs therefore stated a claim upon which relief can be granted and the trial court erred in granting summary judgment to defendant.

Reversed and remanded.

R. C. KAUFMAN, J., concurred in the result reached, noting that the facts alleged in the complaint, when taken in a light most favorable to plaintiffs, were sufficient to plead an intentional nuisance in fact in avoidance of governmental immunity. However, he wrote separately to suggest that a more precise approach using the accepted traditional meanings of terms such as "intentional" and "negligence" is needed to facilitate consistent application of the nuisance doctrine, particularly with respect to how the nuisance doctrine applies in cases involving other issues such as governmental immunity and comparative negligence.

### OPINION OF THE COURT

1. NUISANCE — NUISANCE PER SE — INTENTIONAL NUISANCE IN FACT — GOVERNMENTAL IMMUNITY.

Claims of nuisance per se and intentional nuisance in fact are not barred by governmental immunity.

2. NUISANCE — INTENTIONAL NUISANCE IN FACT.

The trier of fact, in order for a plaintiff to prevail in a case

against a governmental agency based on a claim of intentional nuisance in fact, must find that the governmental agency intended, either by action or inaction, to bring about the conditions which are in fact found to be a nuisance.

3. MOTIONS AND ORDERS — SUMMARY JUDGMENT — COURT RULES.

A court, when ruling on a motion for summary judgment on the ground that the opposing party has failed to state a claim upon which relief can be granted, must scrutinize the legal basis of the pleadings and take the factual allegations and reasonable inferences therefrom as true; summary judgment based on this ground is proper where no factual development can support the claim (GCR 1963, 117.2[1], now MCR 2.116[C][8]).

4. NEGLIGENCE — WILFUL AND WANTON MISCONDUCT — STATUTES.

A plaintiff sufficiently states a claim of wilful and wanton misconduct on the part of the defendant, under the statute which limits the liability of a landowner for injuries to a person using the defendant's land for recreational purposes, where the plaintiff alleges an omission to act by the defendant, which evidences an indifference to whether harm will result.

CONCURRENCE BY R. C. KAUFMAN, J.

5. NUISANCE — INTENTIONAL NUISANCE IN FACT.

*A plaintiff, to successfully prosecute a suit based on intentional nuisance in fact, must prove that: (1) a condition which had a natural tendency to create danger and to inflict injury to person or property existed, (2) the condition had been a nuisance in fact for an appreciable length of time prior to the occurrence of the injury complained of, (3) the defendant controlled the condition, (4) the defendant committed an act which caused the condition to exist by either purposefully creating the condition or knowingly refusing to remove the condition, (5) at the time of defendant's act, defendant knew that an injury would be a substantially certain result of the condition, (6) the condition was a nuisance in fact at the time the injury occurred, and (7) the condition was a proximate cause of the injury.*

6. NUISANCE — NEGLIGENT NUISANCE IN FACT.

*A plaintiff, to successfully prosecute a suit based on negligent nuisance in fact, must prove that: (1) a condition which had a natural tendency to create a danger and inflict injury to person or property existed, (2) the condition had been a nuisance in fact for an appreciable length of time prior to the occurrence of the injury complained of, (3) the defendant controlled the*

*condition, (4) defendant knew or should have known that the presence of the condition presented an unreasonable risk of injury to person or property, (5) defendant, by the exercise of ordinary care, could have removed the condition prior to the injury, and (6) the condition was a proximate cause of the injury.*

*Jan Paul Benedict* and *Mark L. Light,* for plaintiffs.

*Stanton, Bullen, Nelson, Moilanen & Klaasen, P.C.* (by *Charles A. Nelson*), for defendant.

Before: BRONSON, P.J., and R. B. BURNS and R. C. KAUFMAN,* JJ.

R. B. BURNS, J. This action arises out of the drowning of Javier Garcia in the Grand River near the Holton Dam located in the City of Jackson. The dam was built in the 1800s and was modified to its present configuration in the mid-1930s. The modifications included a "box section." The box section is a 5 × 10 foot submerged conduit through which water flows underground for 2,000 feet. The mouth of the pipe is open and unguarded by any grating. Defendant acquired Holton Dam in 1956.

Prior to decedent's drowning, Noel Jeffrey Potter drowned while swimming in the vicinity of the dam when he was sucked into the pipe and dragged under water for 2,000 feet. Shortly after the boy's death, 1,257 residents of Jackson signed a petition urging defendant to correct and improve the dam. Garcia drowned in the same manner as Potter approximately eighteen months later.

Plaintiffs filed a complaint sounding in nuisance per se and nuisance in fact. Subsequently, defendant moved for summary judgment, asserting that

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiffs failed to state a claim upon which relief can be granted, GCR 1963, 117.2(1), now MCR 2.116(C)(8), alleging that the recreational use statute (rus), MCL 300.201; MSA 13.1485, barred the nuisance claims. The trial court granted defendant's motion, but also granted plaintiffs leave to amend their complaint. Plaintiffs filed an amended complaint which contained one count of nuisance per se. Defendant again moved for summary judgment, contending that the action was still barred by the rus. The disposition of defendant's second motion is not contained in the lower court record. A hearing on the motion was scheduled, but plaintiffs filed another amended complaint. The form and substance of the second amended complaint is identical to that of the first amended complaint, except that the caption of Count I reads "Wilful Wanton [sic] Misconduct of the Owner of Holton Dam, City of Jackson" instead of "Nuisance per se." The sufficiency of the second amended complaint is the subject of the present dispute.

Defendant once again moved for summary judgment on the ground that no material issue of fact existed and it was entitled to judgment as a matter of law, pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10). The trial court found that defendant mislabeled its motion and treated it as a motion seeking pretrial disposition based on governmental immunity and proceeded under GCR 1963, 117.2(1), now MCR 2.116(C)(8). The trial court ruled that plaintiffs failed to support a claim of intentional tort to overcome the defense of governmental immunity. The court also concluded that the dam did not fall within the "public building" exception to governmental immunity. Plaintiffs appeal the finding of failure to plead an intentional nuisance.

We first consider whether intentional nuisance

claims are subject to a governmental immunity defense. In *Rosario v Lansing,* 403 Mich 124; 268 NW2d 230 (1978), and *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978), a majority of the justices concluded that claims of nuisance per se and intentional nuisance in fact are not barred by governmental immunity. However, there remains some question as to whether this remains true following the Court's decision in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). We agree with this Court's statement in *Veeneman v Michigan,* 143 Mich App 694, 700; 373 NW2d 193 (1985):

> The Supreme Court in *Ross, supra,* did not expressly consider whether a claim of intentional nuisance continues as a common law exception to governmental immunity. However, in *Disappearing Lakes Ass'n, supra,* one of the cases decided along with *Ross,* the plaintiffs alleged, *inter alia,* that the DNR "negligently and/or intentionally created a nuisance" by issuing a permit for dredging certain canals. The Court of Appeals found that the plaintiffs had not pled a valid claim of nuisance because the issuance of dredging permits alone was not sufficient indication that the DNR actually controlled the project which created the nuisance. The Supreme Court affirmed, finding that "[t]he Court of Appeals conclusion that plaintiffs had insufficiently pleaded a nuisance cause of action is not clearly erroneous." *Ross, supra,* p 657. We can only infer from this statement that the Court intended to retain the common law intentional nuisance exception recognized in *Rosario* and *Gerzeski.* See *Landry v Detroit,* 143 Mich App 16; 371 NW2d 466 (1985).

We now turn our attention to the question of what a plaintiff must show to establish an intentional nuisance. Justice MOODY's opinion in *Ro-*

*sario, supra,* p 142, set forth the following definition:

> In order to find an intentional nuisance, the trier of fact must decide based upon the evidence presented that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance. This finding comports with the definition of intentional nuisance set forth in *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521 (1952):
> "A second [type of nuisance] includes nuisances which are intentional, using that word as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance."

Justice MOODY again quoted from *Denny* in his opinion in *Gerzeski. Gerzeski, supra,* pp 161-162. A plaintiff must show that (1) the condition is a nuisance and (2) the government intended to create the condition.[1]

Defendant also argues that the intentional nuisance exception to governmental immunity does not apply in this case since an intentional nuisance requires an affirmative act and defendant, at most, only failed to act to correct a danger. For support, defendant relies on *Furness v Public Service Comm,* 100 Mich App 365; 299 NW2d 35 (1980). The *Furness* Court held:

> The gravamen of these allegations is that defendants were negligent in failing to correct a known danger (nuisance). This alleged conduct is omissive

[1] We note that a conflict exists in this Court over this issue. Compare *Ford v Detroit,* 91 Mich App 333; 283 NW2d 739 (1979), with *Veeneman, supra.* We believe that *Veeneman* more accurately interprets *Rosario* and *Gerzeski* and that Justice MOODY's opinions in those two cases remain the best statement from the Supreme Court on the issue.

rather than commissive and would therefore fall within the category of a negligent nuisance. As such it remains protected from suit by governmental immunity. [100 Mich App 370.]

A conflict exists within this Court on this issue. In *Landry v Detroit,* 143 Mich App 16, 25; 371 NW2d 466 (1985), a panel of this Court concluded that an omission to act can constitute an intentionally created nuisance:

> We cannot conclude that plaintiffs' claim for an intentionally created nuisance in fact is so unenforceable as a matter of law that no factual development could possibly justify recovery. Plaintiffs' allegation, that defendants refused to take necessary safety measures, pleads a deliberate act by the governmental agency to create the condition. *Rosario,* p 143.

Like the *Landry* Court, we also look to Justice MOODY's opinion in *Rosario* for guidance. After quoting from the complaint, Justice MOODY stated:

> The terms "neglected" and "failed" allege negligent activity. However, liberally construed, the [complaint] pleads more than negligence on the part of the City of Lansing. The word "refused" denotes more than a "want of care in maintenance" or neglect. In this context, "refused" describes an alleged deliberate act by the governmental agency to create the complained-of condition. [*Rosario, supra,* p 143.]

We agree with *Landry* that an omission to act can constitute an intentionally created nuisance.

We now consider the propriety of granting summary judgment under GCR 1963, 117.2(1). In scrutinizing the legal basis of the pleadings, a court must take the factual allegations and reasonable

inferences therefrom as true. *Martin v Michigan,* 129 Mich App 100; 341 NW2d 239 (1983). If no factual development can support the claims, summary disposition is proper. *Id.*

Plaintiffs claim that defendant intentionally created and maintained a structure that presented a danger to the public. The complaint further alleges that defendant knew of the specific danger, since the Potter boy drowned in the vicinity of the box section and members of the public petitioned defendant to improve the dam. Plaintiffs cite several omissions on the part of defendant, including the failure to erect a grating over the conduit's opening, provide proper warnings, and implement safety regulations. Although the amended complaint does not contain the word "nuisance," and may not represent perfection in drafting, the elements of intentional nuisance are alleged.

Accordingly, we conclude that plaintiffs state a claim which evades the defense of governmental immunity.

We now consider the question of whether the recreational use statute prevents a cause of action for intentional nuisance under the facts of this case. That statute provides:

No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee. [MCL 300.210; MSA 13.1485.]

In *Burnett v City of Adrian,* 414 Mich 448, 456; 326 NW2d 810 (1982), the Court concluded that wilful and wanton misconduct can exist where an omission to act evidences an indifference to whether harm will result:

> Upon careful examination of the allegations of the plaintiffs' fourth amended complaint, conceding the truth of all the well-pleaded allegations and resolving all inferences properly to be drawn therefrom in plaintiffs' favor, we are satisfied that, on the whole, the plaintiff has alleged, if barely, facts essentially equivalent to an assertion that the City of Adrian, in its acts and omissions, was indifferent to the likelihood that catastrophe would come to a member of the public using the lake, an indifference essentially equivalent to a willingness that it occur.

Similarly, in the case at bar, we believe that plaintiffs' allegations of defendant's failure to act following the Potter boy's drowning and the subsequent public outcry constitute an allegation of wilful and wanton misconduct which, if proved, removes this case from the scope of the RUS.[2]

Accordingly, we conclude that plaintiffs did state a claim upon which relief can be granted and that the trial court erred in granting summary judgment to defendant.

Reversed and remanded for further proceedings consistent with this opinion. Jurisdiction not retained. Costs to plaintiffs.

BRONSON, P.J., concurred.

---

[2] Indeed, it is likely that virtually any intentional nuisance which escapes the application of governmental immunity also escapes the RUS defense.

R. C. Kaufman, J. *(concurring)*. I concur in the result reached in the majority opinion because the facts alleged in the complaint, when taken in a light most favorable to the plaintiffs, are sufficient to plead an intentional nuisance in fact, and thus the complaint does aver facts in avoidance of governmental immunity. I do not agree entirely, however, with the definition of intentional nuisance as described by the majority's opinion and write separately to elaborate on several problems involved in defining intentional nuisance. Because of the difficulties of the bench and bar generally in applying nuisance doctrine,[1] particularly with respect to how the nuisance doctrine applies in cases involving other issues such as governmental immunity and comparative negligence, a more precise approach using the accepted traditional meanings of terms of art such as "intentional" and "negligence" is needed to facilitate consistent application of nuisance doctrine.

It is particularly with respect to application of the nuisance doctrine in governmental immunity cases that much confusion exists in delineating between intentional and negligent nuisances. In practice, the distinction between intentionally tortious conduct and merely negligent conduct is often blurred so that an act otherwise traditionally recognized as negligent conduct is deemed to be intentional. See, e.g., *McKee v Dep't of Transportation,* 132 Mich App 714; 349 NW2d 798 (1984); *Pacini v Detroit,* 126 Mich App 1; 336 NW2d 882 (1983); *Melendres v Soales,* 105 Mich App 73; 306 NW2d 399 (1981), lv den 413 Mich 916 (1982); *Beckwith v Town of Stratford,* 129 Conn 506, 512-

---

[1] Prosser & Keeton, Law of Torts (5th ed), § 86, pp 616-617.

513; 29 A2d 775 (1942) (and cases discussed therein).[2] It has been recognized that this blurring of traditionally distinct legal concepts is done by courts to obviate the otherwise harsh results that application of governmental immunity may have on a particular plaintiff. As noted in *Schroeder v Canton Twp,* 145 Mich App 439, 441; 377 NW2d 822 (1985): "Too often, 'nuisance' terminology is used to mask what are, in fact, simple negligence claims for the purpose of avoiding some effects of calling it what it is, a negligence claim. Too often this rationale is employed to avoid the legislative decision to impose governmental immunity." See also *Sanford v Detroit,* 143 Mich App 194, 202; 371 NW2d 904 (1985) (SHEPHERD, J., *dissenting*). Yet, this result-oriented approach only culminates in confusion when such imprecise definitions are applied in practice. In my opinion, the best approach would be to define the concept of intentional and negligent nuisance according to proper and legal analysis using terms of art according to their generally accepted, traditional meanings.

Among those areas giving rise to confusion in nuisance law are issues concerning what constitutes a condition and differentiating between intentional and negligent acts.

In Michigan jurisprudence, the term "nuisance" refers to a dangerous condition. *Veeneman v Michigan,* 143 Mich App 694, 699; 373 NW2d 193 (1985). Thus, without regard to other issues such as governmental immunity and comparative negligence, liability for nuisance is predicated on the

---

[2] The definition and distinction between intentional and negligent nuisances stated in *Beckwith,* 129 Conn 506; 29 A2d 775 (1942), was adopted in *Denny v Garavaglia,* 333 Mich 317, 331-332; 52 NW2d 521 (1952), and in Justice MOODY's concurring opinion in *Rosario v Lansing,* 403 Mich 124, 142; 268 NW2d 230 (1978).

existence of a dangerous condition, as opposed to liability being premised on the type of tortious conduct which gave rise to the condition. *Id.; Buckeye Union Fire Ins Co v Michigan,* 383 Mich 603, 636; 178 NW2d 476 (1970).

The cases divide nuisance into two categories: nuisance per se and nuisance in fact. The latter category is divided into intentional nuisance and negligent nuisance. Nuisances per se and nuisances in fact are differentiated on the basis of the type of condition involved. A nuisance per se is a condition which constitutes a nuisance at all times under any conditions, while a nuisance in fact depends upon the existence of circumstances which have the material tendency to create a danger to persons or property. *Rosario v Lansing,* 403 Mich 124, 132-133, 142; 268 NW2d 230 (1978).

It is recognized that while nuisances per se are rare, they can exist. Accepted samples of nuisance per se are found in *Trowbridge v Lansing,* 237 Mich 402; 212 NW 73 (1927) (decaying garbage in a "piggery"); and *Attorney General ex rel Wyoming Twp v Grand Rapids,* 175 Mich 503; 141 NW 890 (1913) (disposing of raw sewage in a river).

Conditions which give rise to the existence of nuisances in fact are dependent on the circumstances present in a given case.[3] Generally, an act which creates a condition may be found to be a nuisance in fact where its natural tendency is to create danger and inflict injury on persons or property. *Martin v Michigan,* 129 Mich App 100, 108; 341 NW2d 239 (1983), lv den 422 Mich 890 (1985). Moreover, for liability to attach, the defendant must have some control over the condition. *Hobrla v Glass,* 143 Mich App 616, 630; 372 NW2d

[3] Indeed, it has been noted that whether or not a particular thing or act creates a nuisance in fact is ordinarily a question of fact. *Rosario, supra.*

630 (1985); *Christopher v Baynton,* 141 Mich App 309, 313-314; 367 NW2d 378 (1985), lv den 423 Mich 852 (1985). One important, yet often overlooked, aspect of what circumstances give rise to nuisances in fact is the length of time a situation must exist before it can be considered a condition that would support a claim of nuisance in fact. For example if, after a traffic accident, a vehicle is left by the police in such a way that it is protruding into the street, is that a "condition" at the moment the vehicle involved in the accident comes to rest and the police take control of the situation? That is, must some appreciable period of time elapse before the presence of that vehicle in the intersection is deemed to be a condition constituting a nuisance? If another motorist strikes the vehicle protruding into the intersection, could liability be founded on the basis that the police who took control of the situation failed to remove the condition? In *Schroeder, supra,* the Court found that approximately twenty-five minutes was an insufficient period of time for the condition to be transformed into a dangerous condition or nuisance. See also *Young v Robin,* 122 Mich App 84; 329 NW2d 430 (1982), lv den 418 Mich 890 (1983). In contrast, had the police allowed that vehicle to remain in the intersection for days or months, then arguably it could constitute a condition to support a claim of nuisance. Consequently, the definition of condition which supports a claim of nuisance would seem to entail some analysis of the duration of the time for which the condition existed prior to the injury complained of by the plaintiff.

As noted above, nuisances in fact are further subdivided between intentional nuisances and negligent nuisances. This distinction as to how the nuisance was created originally became critical in

response to determining whether contributory negligence would bar actions based on nuisance. *Denny v Garavaglia,* 333 Mich 317; 52 NW2d 521 (1952). In *Denny,* the Court held that only negligently caused nuisances in fact were barred by contributory negligence; intentional nuisances were not. Presently, with the adoption of comparative negligence, this distinction retains importance since in *Melendres v Soales, supra,* p 84, the Court held that comparative negligence would be inapplicable to actions based on intentional nuisances in fact.[4] In cases involving governmental immunity the distinction between intentional and negligently caused nuisances in fact is also critical since, based on the opinions in *Rosario, supra,* and *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978), rehearing denied 403 Mich 956 (1978), this Court has consistently held that there is an exception to governmental immunity for intentional nuisances in fact. *Schroeder, supra,* p 441 n 4 (and cases cited therein).[5]

As noted earlier, presently there exists some confusion as to what courts mean by the use of the word "intentional" in the phrase "intentional nuisance." Utilizing the approach taken by Justice MOODY in *Rosario, supra,* p 142, the intent requirement of intentional nuisance has been defined in the following terms:

A second [type of nuisance] includes nuisances

---

[4] In *Melendres, supra,* p 83, n 6, the Court noted that the peculiar definition accorded the words "intentional" in *Denny, supra,* pp 331-332, may have been originally adopted to ameliorate the harshness of the contributory doctrine, and that in view of the adoption of comparative negligence this reason no longer existed.

[5] This Court has also found that actions founded on intentional nuisances in fact continue to survive governmental immunity notwithstanding the Supreme Court's decision in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). See *Veeneman v Michigan,* 143 Mich App 694, 700; 373 NW2d 193 (1985).

which are intentional, using that word as meaning
not that a wrong or the existence of a nuisance
was intended but that the creator of them in-
tended to bring about the conditions which are in
fact found to be a nuisance.

It is clear, however, that under this definition
much conduct which is traditionally considered to
be merely negligent (i.e., mere failure to post
warnings of latent dangers in a pond) is regarded
as "intentional." *Melendres, supra,* pp 82-83.
While a court's desire to lower the threshold level
necessary to show an intentional nuisance in fact
in order to avoid the harshness of the doctrine of
governmental immunity is, perhaps, understand-
able, the method chosen to accomplish this result,
namely the adoption of a special definition for the
word "intentional," has led to needless confusion
in the area, and ultimately to inconsistent results
when other issues, such as application of compara-
tive negligence, come into play.[6] Consequently, the
appropriate approach to take would be to define
the words "intentional" and "negligent" when
used to describe different sorts of nuisances in fact
as they are otherwise traditionally defined in the
law of torts.

---

[6] The use of this special definition for "intentional," of course,
results in an anomaly when the issue of comparative negligence
arises. Under the approach to the definition as stated in Justice
MOODY's opinion, comparative negligence would not be deemed a
partial defense in cases otherwise involving claims of negligence and
to which comparative negligence would ordinarily apply. See *Melen-
dres, supra.* In a probable effort to avoid this anomaly, this Court in
*Dinger v Dep't of Natural Resources,* 147 Mich App 164, 176-177; 383
NW2d 606 (1985), directed the trial court to give a comparative
negligence instruction in a case where plaintiff had established the
existence of an intentional nuisance in fact but where defendant had
established that the plaintiff was guilty of wilful and wanton miscon-
duct. Yet this approach does not avoid the basic inconsistency of
comparative negligence applying in negligence actions but not apply-
ing to those cases successfully pleaded as intentional nuisances in fact
but which allege nothing more than which is typically deemed negli-
gent conduct.

The traditional approach to defining intent or intentional conduct for purposes of defining when an intentional tort is committed—as opposed to mere negligent acts—is described in Prosser & Keeton, Law of Torts (5th ed), § 8, pp 34-36:

> The three most basic elements of this most common usage of "intent" are that (1) it is a *state of mind* (2) about *consequences* of an act (or omission) and not about the act itself, and (3) it extends not only to having in mind a purpose (or desire) to bring about given consequences but also to having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act.
>
> \* \* \*
>
> As already noted, however, intent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does.
>
> \* \* \*
>
> On the other hand, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. The line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty.
>
> The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a

result which will invade the interests of another in a way that the law forbids.

This treatment of the element of intent necessary for intentional torts historically finds support in Michigan jurisprudence in cases differentiating between intentional torts such as assaults and batteries on the one hand and nonintentional conduct on the other. *Striker v Martindale,* 372 Mich 578; 127 NW2d 306 (1964); *Cogswell v Kells,* 293 Mich 541; 292 NW 483 (1940).

As noted above, it is the degree of knowledge that typically separates intentional from negligent conduct. Mere knowledge, actual or constructive, of an appreciable risk is simply not sufficient. Rather, as Prosser makes clear, it is knowledge that the risk of harm is a substantial certainty which is the distinguishing element.

Utilizing this traditional distinction between intentional and negligent conduct, along with the above discussion as to what conditions constitute a nuisance in fact, the elements of intentional nuisance in fact should be the following:

1. The existence of a condition which has a natural tendency to create danger and to inflict injury to person or property.

2. The condition had been a nuisance in fact for an appreciable length of time prior to the occurrence of the injury (appreciable would have to be made on a case by case analysis; in some cases five minutes may be appreciable; in other situations months may not be).

3. The defendant controls the condition.

4. Defendant commits an act which caused the condition to exist. The act can be either the purposeful creation of the condition (i.e., act of commission), or the knowing refusal to remove a condi-

tion over which the defendant has control (i.e., act of omission).[7]

5. At the time of the defendant's act he knew that an injury resulting from the condition was substantially certain to result from the condition (note that the words are not "knew, or should have known," because "or should have known" are words of negligence).

6. At the time the injury complained of occurs, the condition is a nuisance in fact.

7. The condition is a proximate cause of the injury complained of by the plaintiff.

In contrast, the elements of a negligent[8] nuisance in fact should be as follows:

1. The existence of a condition which has a natural tendency to create danger and inflict injury to person or property.

2. The condition had been a nuisance in fact for an appreciable length of time prior to the occurrence of the injury (appreciable would have to be made on a case by case analysis; in some cases five minutes may be appreciable, in other situations months may not be).

3. The defendant controls the condition.

4. Defendant knew or should have known that the presence of the condition presented an unreasonable risk of injury to person or property.

5. By the exercise of ordinary care, defendant could have removed the condition prior to the injury complained of.

6. The condition is a proximate cause of the injury complained of by the plaintiff.

---

[7] See *Landry v Detroit,* 143 Mich App 16, 25; 371 NW2d 466 (1985); *Veeneman v Michigan, supra.*

[8] The traditional elements of a cause of action for negligence were summarized in *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), reh den 401 Mich 961 (1977).

Turning to the merits of the instant case, a review of the facts alleged by the plaintiffs, as summarized in the majority's opinion, when measured against the foregoing formulation as to what should be necessary to plead an intentional nuisance in fact, leads me to conclude that the plaintiffs have pled an intentional nuisance in fact. I therefore concur in the result reached in the majority's opinion.